# EXHIBIT 2

Reference Copy Only.  Do Not Mail to the FCC as an Application.

Submitted: 03/31/2008 at 16:09:26
File Number: 0003379814

| FCC 601 | FCC Application for Radio Service Authorization: | Approved by OMB |
|---|---|---|
| Main Form | Wireless Telecommunications Bureau<br>Public Safety and Homeland Security Bureau | 3060 - 0798<br>See instructions for<br>public burden estimate |

| 1) Radio Service Code:<br>**WY** | 1a) Existing Radio Service Code: |
|---|---|

**General Information**

| 2) | (Select only one)  **( NE )** | | | |
|---|---|---|---|---|
| | **NE** - New | **RO** - Renewal Only | **AU** - Administrative Update | **NT** - Required Notifications |
| | **MD** - Modification | **RM** - Renewal/Modification | **WD** - Withdrawal of Application | **EX** - Requests for Extension of Time |
| | **AM** - Amendment | **CA** - Cancellation of License | **DU** - Duplicate License | **RL** – Registered Location/Link |

| 3a) | If this application is for a **D**evelopmental License, De**m**onstration License, or a **S**pecial Temporary Authorization (STA), enter the code and attach the required exhibit as described in the instructions.  Otherwise enter '**N**' (Not Applicable). | ( **N** )D **M** **S** N/A |
|---|---|---|
| 3b) | If this application is for Special Temporary Authority due to an emergency situation, enter 'Y'; otherwise enter 'N'. Refer to Rule 1.915 for an explanation of situations considered to be an emergency. | (    )Yes  **No** |
| 4) | If this application is for an Amendment or Withdrawal, enter the file number of the pending application currently on file with the FCC. | File Number |
| 5) | If this application is for a Modification, Renewal Only, Renewal/Modification, Cancellation of License, Duplicate License, or Administrative Update, enter the call sign of the existing FCC license.<br>If this is a request for Registered Location/Link, enter the FCC call sign assigned to the geographic license. | Call Sign |
| 6) | If this application is for a New, Amendment, Renewal Only, or Renewal/Modification, enter the requested authorization expiration date (this item is optional). | MM      DD<br>___/___ |
| 7) | Is this application "major" as defined in §1.929 of the Commission's Rules when read in conjunction with the applicable radio service rules found in Parts 22 and 90 of the Commission's Rules?  (NOTE: This question only applies to certain site-specific applications.  See the instructions for applicability and full text of §1.929). | (    )Yes  **No** |
| 8) | Are attachments (other than associated schedules) being filed with this application? | ( **Y** )Yes  No |

**Fees, Waivers, and Exemptions**

| 9) Is the Applicant exempt from FCC application fees? | ( **N** )Yes  **No** |
|---|---|
| 10) Is the Applicant exempt from FCC regulatory fees? | ( **N** )Yes  **No** |
| 11a) Does this application include a request for a Waiver of the Commission's Rule(s)?<br>If 'Yes', attach an exhibit providing rule number(s) and explaining circumstances. | ( **N** )Yes  **No** |
| 11b)  If 11a is 'Y', enter the number of rule sections involved. | Number of<br>Rule Section(s): _____ |
| 12) Are the frequencies or parameters requested in this filing covered by grandfathered privileges, previously approved by waiver, or functionally integrated with an existing station? | ( **N** )Yes  **No** |

**Applicant Information**

13) FCC Registration Number (FRN):

**0017169327**

14) Applicant/Licensee legal entity type: (Select One )

☐ Individual ☐ Corporation ☐ Unincorporated Association ☐ Trust ☐ Government Entity

☐ Consortium ☐ General Partnership ☐ Limited Liability Company ☐ Limited Liability Partnership

☒ Limited Partnership ☐ Other (Description of Legal Entity)

15) If the licensee name is being updated, is the update a result from the sale (or transfer of control) of the license(s) to another party and for which proper Commission approval has not been received or proper notification not provided? ( )Yes No

16) First Name (if individual): | MI: | Last Name: | Suffix:

17) Legal Entity Name (if other than individual):

**King Street Wireless, L.P.**

18) Attention To:

**Allison Cryor DiNardo**

19) P.O. Box: | And/Or | 20) Street Address:

**105 North Washington Street, Suite 301**

21) City: **Alexandria** | 22) State: **VA** | 23) Zip Code: **22314**

24) Telephone Number: **(703)518-9902** | 25) FAX: **(703)518-8993**

26) E-Mail Address: **allison@varsitypartners.com**

27) Demographics (Optional):

| Race: | Ethnicity: | Gender: |
|---|---|---|
| ☐ American Indian or Alaska Native | ☐ Hispanic or Latino | ☐ Male |
| ☐ Asian | ☐ Not Hispanic or Latino | ☐ Female |
| ☐ Black or African-American | | |
| ☐ Native Hawaiian or Other Pacific Islander | | |
| ☐ White | | |

**Real Party in Interest**

28) Name of Real Party in Interest of Applicant (If different from applicant): | 29) FCC Registration Number (FRN) of Real Party in Interest:

**Contact Information** (If different from the applicant)

30) First Name: | MI: | Last Name: | Suffix:

31) Company Name:

**Lukas, Nace, Gutierrez & Sachs, Chartered**

32) Attention To:

**Thomas Gutierrez**

33) P.O. Box: | And /Or | 34) Street Address:

**1650 Tysons Boulevard, Suite 1500**

35) City: **McLean** | 36) State: **VA** | 37) Zip Code: **22102**

38) Telephone Number: **(703)584-8678** | 39) FAX: **(703)584-8696**

40) E-Mail Address: **tgutierrez@fcclaw.com**

**Regulatory Status**

| 41) This filing is for authorization to provide or use the following type(s) of radio service offering (enter all that apply): |
|---|
| ( **X** )Common Carrier    ( **X** )Non-Common Carrier    (    )Private, internal communications    (    )Broadcast Services    (    )Band Manager |

**Type of Radio Service**

| 42) This filing is for authorization to provide the following type(s) of radio service (choose all that apply): |  |
|---|---|
| ( **X** )Fixed        ( **X** )Mobile        ( **X** )Radiolocation        (    )Satellite (sound)        (    )Broadcast Services |  |
| 43) Does the Applicant propose to provide service interconnected to the public telephone network? | ( **Y** )Yes  **No** |

**Alien Ownership Questions (If any answer is 'Y', provide an attachment explaining the circumstances)**

| 44) Is the Applicant a foreign government or the representative of any foreign government? | ( **N** )Yes  **No** |
|---|---|
| 45) Is the Applicant an alien or the representative of an alien? | ( **N** )Yes  **No** |
| 46) Is the Applicant a corporation organized under the laws of any foreign government? | ( **N** )Yes  **No** |
| 47) Is the Applicant a corporation of which more than one-fifth of the capital stock is owned of record or voted by aliens or their representatives or by a foreign government or representative thereof or by any corporation organized under the laws of a foreign country? | ( **N** )Yes  **No** |
| 48a) Is the Applicant directly or indirectly controlled by any other corporation of which more than one-fourth of the capital stock is owned of record or voted by aliens, their representatives, or by a foreign government or representative thereof, or by any corporation organized under the laws of a foreign country? | ( **N** )Yes  **No** |
| 48b) If the answer to 48a is 'Y', has the Applicant received a ruling(s) under Section 310(b)(4) of the Communications Act with respect to the same radio service involved in this application?  If the answer to 48b is 'Y', include in the exhibit required by Item 48a the citation(s) of the applicable declaratory ruling(s) by DA/FCC number of the FCC Record citation, if available, release date, and any other identifying information.  If the answer to 48b is 'N', attach to this filing a date-stamped copy of a request for a foreign ownership ruling pursuant to Section 310(b)(4) of the Communications Act.  It is not necessary to file a request for a foreign ownership ruling if the Applicant  includes in the exhibit required by Item 48a a showing that the requested license(s) is exempt from the provisions of Section 310(b)(4). | (    )Yes  **No** |

**Basic Qualification Questions**

| 49) Has the Applicant or any party to this application had any FCC station authorization, license or construction permit revoked or had any application for an initial, modification or renewal of FCC station authorization, license, or construction permit denied by the Commission? | ( **N** )Yes  **No** |
|---|---|
| 50) Has the Applicant or any party to this application, or any party directly or indirectly controlling the Applicant, ever been convicted of a felony by any state or federal court? | ( **N** )Yes  **No** |
| 51) Has any court finally adjudged the Applicant or any party directly or indirectly controlling the Applicant guilty of unlawfully monopolizing or attempting unlawfully to monopolize radio communication, directly or indirectly, through control of manufacture or sale of radio apparatus, exclusive traffic arrangement, or any other means or unfair methods of competition?  If the answer to any of 49-51 is 'Y', attach an exhibit explaining the circumstances. | ( **N** )Yes  **No** |

**Aeronautical Advisory Station (Unicom) Certification**

| 52) (    )  I certify that the station will be located on property of the airport to be served, and, in cases where the airport does not have a control tower, RCO, or FAA flight service station, that I have notified the owner of the airport and all aviation service organizations located at the airport within ten days prior to application. |
|---|

**Broadband Radio Service and Educational Broadband Service Cable Cross-Ownership**

| 53a)  Will the requested facilities be used to provide multichannel video programming service? | (    )Yes  **No** |
|---|---|
| 53b) If the answer to question 53a is 'Y', does the Applicant operate, control or have an attributable interest (as defined in Section 27.1202 of the Commission's Rules) in a cable television system whose franchise area is located within the geographic service area of the requested facilities?  **Note:  If the answer to question 53b is 'Y'**, attach an exhibit explaining how the Applicant complies with Section 27.1202 of the Commission's Rules or justifying a waiver of that rule.  If a waiver of the Commission Rule(s) is being requested, Item 11a must be answered 'Y'. | (    )Yes  **No** |

**Broadband Radio Service and Educational Broadband Service (Part 27)**

| 54) (For EBS only) Does the Applicant comply with the programming requirements contained in Section 27.1203 of the Commission's Rules?  **Note:  If the answer to item 54 is 'N',** attach an exhibit explaining how the Applicant complies with Section 27.1203 of the Commission's Rules or justifying a waiver of that rule.  If a waiver of the Commission Rule(s) is being requested, Item 11a must be answered 'Y'. | (    )Yes  **No** |
|---|---|
| 55)  (For BRS and EBS) Does the Applicant comply with Sections 27.50, 27.55, and 27.1221 of the Commission's Rules?  **Note:  If the answer to item 55 is 'N',** attach an exhibit justifying a waiver of that rule(s).  If a waiver of the Commission Rule(s) is being requested, Item 11a must be answered 'Y'. | (    )Yes  **No** |

**General Certification Statements**

| | |
|---|---|
| 1) | The applicant waives any claim to the use of any particular frequency or of the electromagnetic spectrum as against the regulatory power of the United States because of the previous use of the same, whether by license or otherwise, and requests an authorization in accordance with this application. |
| 2) | The applicant certifies that grant of this application would not cause the applicant to be in violation of any pertinent cross-ownership or attribution rules.*<br>*If the applicant has sought a waiver of any such rule in connection with this application, it may make this certification subject to the outcome of the waiver request. |
| 3) | The applicant certifies that all statements made in this application and in the exhibits, attachments, or documents incorporated by reference are material, are part of this application, and are true, complete, correct, and made in good faith. |
| 4) | The applicant certifies that neither the applicant nor any other party to the application is subject to a denial of Federal benefits pursuant to §5301 of the Anti-Drug Abuse Act of 1988, 21 U.S.C. § 862, because of a conviction for possession or distribution of a controlled substance.  This certification does not apply to applications filed in services exempted under §1.2002(c) of the rules, 47 CFR § 1.2002(c).  See §1.2002(b) of the rules, 47 CFR § 1.2002(b), for the definition of "party to the application" as used in this certification. |
| 5) | The applicant certifies that it either (1) has current required ownership data on file with the Commission, (2) is filing updated ownership data simultaneously with this application, or (3) is not required to file ownership data under the Commission's rules. |
| 6) | The applicant certifies that the facilities, operations, and transmitters for which this authorization is hereby requested are either: (1) categorically excluded from routine environmental evaluation for RF exposure as set forth in 47 C.F.R. 1.1307(b); or, (2) have been found not to cause human exposure to levels of radiofrequency radiation in excess of the limits specified in 47 C.F.R. 1.1310 and 2.1093; or, (3) are the subject of one or more Environmental Assessments filed with the Commission. |
| 7) | The applicant certifies that it has reviewed the appropriate Commission rules defining eligibility to hold the requested license(s), and is eligible to hold the requested license(s). |
| 8) | The applicant certifies that it is not in default on any payment for Commission licenses and that it is not delinquent on any non-tax debt owed to any federal agency. |

**Signature**

56) Typed or Printed Name of Party Authorized to Sign

| First Name:<br><br>**Allison** | | MI: | Last Name:<br><br>**Cryor DiNardo** | Suffix: |
|---|---|---|---|---|

| 57) Title:<br><br>**President of General Partner** | | | |
|---|---|---|---|

| Signature:<br><br>**Allison      Cryor DiNardo** | | | 58)  Date:<br><br>**03/31/2008** |
|---|---|---|---|

**FAILURE TO SIGN THIS APPLICATION MAY RESULT IN DISMISSAL OF THE APPLICATION AND FORFEITURE OF ANY FEES PAID.**

Upon grant of this license application, the licensee may be subject to certain construction or coverage requirements.  Failure to meet the construction or coverage requirements will result in termination of the license.  Consult appropriate FCC regulations to determine the construction or coverage requirements that apply to the type of license requested in this application.

**WILLFUL FALSE STATEMENTS MADE ON THIS FORM OR ANY ATTACHMENTS ARE PUNISHABLE BY FINE AND/OR IMPRISONMENT (U.S. Code, Title 18, §1001) AND/OR REVOCATION OF ANY STATION LICENSE OR CONSTRUCTION PERMIT (U.S. Code, Title 47, §312(a)(1)), AND/OR FORFEITURE (U.S. Code, Title 47, §503).**

**FCC 601**
**Schedule B**

## Schedule for Geographically Licensed Services

Approved by OMB
3060 − 0798
See 601 Main Form Instructions
for public burden estimate

**Market/Channel Block**

| 1)<br>Market<br>Designator | 2)<br>Market Name | 3)<br>Channel Block | 4)<br>Sub-Market<br>Designator | 5)<br>Percentage of<br>Bidding Credit | 6)<br>Open/Closed<br>Bidding | 7)<br>I Am Seeking A<br>Tribal Lands Bidding<br>Credit In This Market |
|---|---|---|---|---|---|---|
| BEA001 | Bangor, ME | A | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| BEA002 | Portland, ME | A | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| BEA004 | Burlington, VT-NY | A | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| BEA017 | Roanoke, VA-NC-WV | A | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| BEA019 | Raleigh-Durham-Chapel Hill, NC | A | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| BEA046 | Hickory-Morganton, NC-TN | A | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| BEA048 | Charleston, WV-KY-OH | A | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| BEA060 | Appleton-Oshkosh-Neenah, WI | A | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| BEA063 | Milwaukee-Racine, WI | A | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| BEA065 | Elkhart-Goshen, IN-MI | A | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| BEA066 | Fort Wayne, IN | A | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| BEA068 | Champaign-Urbana, IL | A | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| BEA093 | Joplin, MO-KS-OK | A | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| BEA096 | St. Louis, MO-IL | A | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| BEA097 | Springfield, IL-MO | A | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| BEA100 | Des Moines, IA-IL-MO | A | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| BEA102 | Davenport-Moline-Rock Island, | A | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| BEA104 | Madison, WI-IA-IL | A | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| BEA106 | Rochester, MN-IA-WI | A | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |

| 1)<br>Market Designator | 2)<br>Market Name | 3)<br>Channel Block | 4)<br>Sub-Market Designator | 5)<br>Percentage of Bidding Credit | 6)<br>Open/Closed Bidding | 7)<br>I Am Seeking A Tribal Lands Bidding Credit In This Market |
|---|---|---|---|---|---|---|
| BEA108 | Wausau, WI | A | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| BEA120 | Grand Island, NE | A | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| BEA121 | North Platte, NE-CO | A | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| BEA165 | Redding, CA-OR | A | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| BEA166 | Eugene-Springfield, OR-CA | A | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| BEA169 | Richland-Kennewick-Pasco, WA | A | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA102 | Des Moines, IA | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA140 | Charleston, WV | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA149 | Fayetteville, NC | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA176 | Springfield, IL | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA179 | Topeka, KS | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA183 | Asheville, NC | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA186 | Green Bay, WI | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA189 | Racine, WI | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA193 | Benton Harbor, MI | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA195 | Cedar Rapids, IA | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA200 | Parkersburg-Marietta, OH-WV | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA201 | Waterloo-Cedar Falls, IA | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA203 | Lynchburg, VA | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA216 | Janesville-Beloit, WI | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA218 | Wilmington, NC | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA223 | Elkhart-Goshen, IN | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |

| 1)<br>Market<br>Designator | 2)<br>Market Name | 3)<br>Channel Block | 4)<br>Sub-Market<br>Designator | 5)<br>Percentage of<br>Bidding Credit | 6)<br>Open/Closed<br>Bidding | 7)<br>I Am Seeking A<br>Tribal Lands Bidding<br>Credit In This Market |
|---|---|---|---|---|---|---|
| CMA224 | Bangor, ME | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| CMA229 | Medford, OR | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| CMA230 | Decatur, IL | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| CMA232 | Eau Claire, WI | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| CMA233 | Wichita Falls, TX | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| CMA244 | Kenosha, WI | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| CMA247 | Lafayette, IN | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| CMA250 | Bloomington-Normal, IL | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| CMA253 | Sioux City, IA-NE | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| CMA254 | Redding, CA | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| CMA256 | Charlottesville, VA | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| CMA257 | Hagerstown, MD | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| CMA258 | Jacksonville, NC | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| CMA260 | Lawton, OK | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| CMA262 | Danville, VA | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| CMA263 | Wausau, WI | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| CMA269 | Cumberland, MD-WV | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| CMA275 | St. Joseph, MO | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| CMA277 | Sheboygan, WI | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| CMA279 | Lewiston-Auburn, ME | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| CMA280 | Burlington, NC | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| CMA286 | Dubuque, IA | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |

| 1)<br>Market Designator | 2)<br>Market Name | 3)<br>Channel Block | 4)<br>Sub-Market Designator | 5)<br>Percentage of Bidding Credit | 6)<br>Open/Closed Bidding | 7)<br>I Am Seeking A Tribal Lands Bidding Credit In This Market |
|---|---|---|---|---|---|---|
| CMA296 | Iowa City, IA | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| CMA302 | Enid, OK | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| CMA304 | Joliet, IL | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| CMA305 | Alton-Granite City, IL | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| CMA336 | California 1 - Del Norte | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| CMA337 | California 2 - Modoc | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| CMA343 | California 8 - Tehama | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| CMA344 | California 9 - Mendocino | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| CMA395 | Illinois 2 - Bureau | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| CMA398 | Illinois 5 - Mason | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| CMA400 | Illinois 7 - Vermilion | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| CMA402 | Illinois 9 - Clay | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| CMA403 | Indiana 1 - Newton | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| CMA409 | Indiana 7 - Owen | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| CMA412 | Iowa 1 - Mills | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| CMA413 | Iowa 2 - Union | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| CMA414 | Iowa 3 - Monroe | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| CMA415 | Iowa 4 - Muscatine | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| CMA416 | Iowa 5 - Jackson | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| CMA418 | Iowa 7 - Audubon | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| CMA419 | Iowa 8 - Monona | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |
| CMA421 | Iowa 10 - Humboldt | B | 0 | 25.00% | Open | ( ) Yes ( **X** ) No |

| 1)<br>Market<br>Designator | 2)<br>Market Name | 3)<br>Channel Block | 4)<br>Sub-Market<br>Designator | 5)<br>Percentage of<br>Bidding Credit | 6)<br>Open/Closed<br>Bidding | 7)<br>I Am Seeking A<br>Tribal Lands Bidding<br>Credit In This Market |
|---|---|---|---|---|---|---|
| CMA422 | Iowa 11 - Hardin | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA423 | Iowa 12 - Winneshiek | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA425 | Iowa 14 - Kossuth | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA426 | Iowa 15 - Dickinson | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA427 | Iowa 16 - Lyon | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA436 | Kansas 9 - Morris | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA437 | Kansas 10 - Franklin | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA441 | Kansas 14 - Reno | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA442 | Kansas 15 - Elk | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA463 | Maine 1 - Oxford | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA464 | Maine 2 - Somerset | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA465 | Maine 3 - Kennebec | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA467 | Maryland 1 - Garrett | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA504 | Missouri 1 - Atchison | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA505 | Missouri 2 - Harrison | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA506 | Missouri 3 - Schuyler | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA513 | Missouri 10 - Benton | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA515 | Missouri 12 - Maries | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA521 | Missouri 18 - Perry | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA522 | Missouri 19 - Stoddard | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA535 | Nebraska 3 - Knox | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA536 | Nebraska 4 - Grant | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |

| 1)<br>Market<br>Designator | 2)<br>Market Name | 3)<br>Channel Block | 4)<br>Sub-Market<br>Designator | 5)<br>Percentage of<br>Bidding Credit | 6)<br>Open/Closed<br>Bidding | 7)<br>I Am Seeking A<br>Tribal Lands Bidding<br>Credit In This Market |
|---|---|---|---|---|---|---|
| CMA537 | Nebraska 5 - Boone | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA542 | Nebraska 10 - Cass | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA548 | New Hampshire 1 - Coos | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA549 | New Hampshire 2 - Carroll | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA559 | New York 1 - Jefferson | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA560 | New York 2 - Franklin | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA567 | North Carolina 3 - Ashe | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA569 | North Carolina 5 - Anson | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA570 | North Carolina 6 - Chatham | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA573 | North Carolina 9 - Camden | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA574 | North Carolina 10 - Harnett | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA575 | North Carolina 11 - Hoke | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA577 | North Carolina 13 - Greene | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA578 | North Carolina 14 - Pitt | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA597 | Oklahoma 2 - Harper | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA600 | Oklahoma 5 - Roger Mills | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA602 | Oklahoma 7 - Beckham | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA603 | Oklahoma 8 - Jackson | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA604 | Oklahoma 9 - Garvin | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA607 | Oregon 2 - Hood River | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA610 | Oregon 5 - Coos | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA621 | Pennsylvania 10 - Bedford | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |

| 1) Market Designator | 2) Market Name | 3) Channel Block | 4) Sub-Market Designator | 5) Percentage of Bidding Credit | 6) Open/Closed Bidding | 7) I Am Seeking A Tribal Lands Bidding Credit In This Market |
|---|---|---|---|---|---|---|
| CMA656 | Texas 5 - Hardeman | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA679 | Vermont 1 - Franklin | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA680 | Vermont 2 - Addison | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA682 | Virginia 2 - Tazewell | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA683 | Virginia 3 - Giles | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA684 | Virginia 4 - Bedford | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA685 | Virginia 5 - Bath | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA686 | Virginia 6 - Highland | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA699 | Washington 7 - Skamania | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA701 | West Virginia 1 - Mason | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA702 | West Virginia 2 - Wetzel | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA703 | West Virginia 3 - Monongalia | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA704 | West Virginia 4 - Grant | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA705 | West Virginia 5 - Tucker | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA706 | West Virginia 6 - Lincoln | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA707 | West Virginia 7 - Raleigh | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA708 | Wisconsin 1 - Burnett | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA709 | Wisconsin 2 - Bayfield | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA710 | Wisconsin 3 - Vilas | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA711 | Wisconsin 4 - Marinette | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA713 | Wisconsin 6 - Trempealeau | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |
| CMA715 | Wisconsin 8 - Vernon | B | 0 | 25.00% | Open | ( ) Yes ( X ) No |

| 1)<br>Market<br>Designator | 2)<br>Market Name | 3)<br>Channel Block | 4)<br>Sub-Market<br>Designator | 5)<br>Percentage of<br>Bidding Credit | 6)<br>Open/Closed<br>Bidding | 7)<br>I Am Seeking A<br>Tribal Lands Bidding<br>Credit In This Market |
|---|---|---|---|---|---|---|
| **CMA717** | **Wisconsin 10 - Door** | **B** | **0** | **25.00%** | **Open** | ( ) Yes ( **X** ) No |

TRIBAL LANDS INFORMATION - Complete only when attaching the required certification(s) from the tribal government(s)

| 8)<br>Market<br>Designator | 9)<br>Channel<br>Block | 10)<br>Name of Tribal Lands | 11)<br>Area, in<br>square kms,<br>of tribal<br>lands<br>contained<br>within<br>designated<br>market | 12)<br>Indicate with an "x"<br>those tribal lands<br>where applicant has<br>secured the required<br>certification(s) from<br>the tribal<br>governments [attach<br>certification(s)] | 13)<br>The amount of<br>bidding credit as<br>defined by FCC<br>Rules (by Market) | 14)<br>Additional amount of<br>bidding credit<br>requested (attach<br>justification) |
|---|---|---|---|---|---|---|
| | | | | | | |

**15) Agreement Identifier:**   Action Requested: ☐ Add  ☐ Delete

Type of Agreement: ☐ Collusion-Based   ☐ Designated Entity   ☒ Other (Description of Type of Agreement)_____   **Form 175 Agreement**

| Agreement Name:   **Agreement 1** |
|---|
| |

**Party(ies) to Agreement(s)**

Action Requested: ☐ Add     ☐ Delete

| ☒ Entity Name: | Legal Entity Name   **King Street Wireless, L.P.** | | FCC Registration Number (FRN):<br>**0017169327** |
|---|---|---|---|
| ☐ Individual Name: | First | MI   Last | Suffix |
| FCC Registration Number (FRN): | | | |

Action Requested: ☐ Add     ☐ Delete

| ☒ Entity Name: | Legal Entity Name   **United States Cellular Corporation** | | FCC Registration Number (FRN):<br>**0004372322** |
|---|---|---|---|
| ☐ Individual Name: | First | MI   Last | Suffix |
| FCC Registration Number (FRN): | | | |

**15) Agreement Identifier:** Action Requested: ☐ Add ☐ Delete

Type of Agreement: ☐ Collusion-Based ☐ Designated Entity ☒ Other (Description of Type of Agreement)_____ **Form 175 Agreement**

| Agreement Name: | **Agreement 2** |
|---|---|

**Party(ies) to Agreement(s)**

Action Requested: ☐ Add ☐ Delete

| ☒ Entity Name: | Legal Entity Name | **King Street Wireless, L.P.** | FCC Registration Number (FRN): **0017169327** |
|---|---|---|---|
| ☐ Individual Name: | First | MI | Last | Suffix |
| FCC Registration Number (FRN): | | | |

Action Requested: ☐ Add ☐ Delete

| ☒ Entity Name: | Legal Entity Name | **USCC Wireless Investment, Inc.** | FCC Registration Number (FRN): **0007292097** |
|---|---|---|---|
| ☐ Individual Name: | First | MI | Last | Suffix |
| FCC Registration Number (FRN): | | | |

**15) Agreement Identifier:** Action Requested: ☐ Add ☐ Delete

Type of Agreement: ☐ Collusion-Based ☐ Designated Entity ☒ Other (Description of Type of Agreement)_____ **Form 175 Agreement**

| Agreement Name: | **AT&T Exchange Agreement** |
|---|---|

**Party(ies) to Agreement(s)**

Action Requested: ☐ Add ☐ Delete

| ☒ Entity Name: | Legal Entity Name | **United States Cellular Corporation** | FCC Registration Number (FRN): **0004372322** |
|---|---|---|---|
| ☐ Individual Name: | First | MI | Last | Suffix |
| FCC Registration Number (FRN): | | | |

Action Requested: ☐ Add ☐ Delete

| ☒ Entity Name: | Legal Entity Name | **New Cingular Wireless Services, Inc.** | FCC Registration Number (FRN): **0004122032** |
|---|---|---|---|
| ☐ Individual Name: | First | MI | Last | Suffix |
| FCC Registration Number (FRN): | | | |

**15) Agreement Identifier:**   Action Requested:  ☐ Add  ☐ Delete
Type of Agreement:   ☐ Collusion-Based   ☐ Designated Entity  ☒ Other (Description of Type of Agreement)_____   **Form 175 Agreement**

| Agreement Name: | **Bidding Agreement** |
|---|---|

**Party(ies) to Agreement(s)**

Action Requested:  ☐ Add      ☐ Delete

| ☒ Entity Name: | Legal Entity Name **King Street Wireless, L.P.** | | FCC Registration Number (FRN): **0017169327** |
|---|---|---|---|
| ☐ Individual Name: | First | MI  Last | Suffix |
| FCC Registration Number (FRN): | | | |

Action Requested:  ☐ Add      ☐ Delete

| ☒ Entity Name: | Legal Entity Name **United States Cellular Corporation** | | FCC Registration Number (FRN): **0004372322** |
|---|---|---|---|
| ☐ Individual Name: | First | MI  Last | Suffix |
| FCC Registration Number (FRN): | | | |

**15) Agreement Identifier:**   Action Requested:  ☐ Add  ☐ Delete
Type of Agreement:   ☐ Collusion-Based   ☐ Designated Entity  ☒ Other (Description of Type of Agreement)_____   **Form 175 Agreement**

| Agreement Name: | **Joint Bidding Agreement** |
|---|---|

**Party(ies) to Agreement(s)**

Action Requested:  ☐ Add      ☐ Delete

| ☒ Entity Name: | Legal Entity Name **Muskrat Wireless, L.P.** | | FCC Registration Number (FRN): **0002842425** |
|---|---|---|---|
| ☐ Individual Name: | First | MI  Last | Suffix |
| FCC Registration Number (FRN): | | | |

Action Requested:  ☐ Add      ☐ Delete

| ☒ Entity Name: | Legal Entity Name **United States Cellular Corporation** | | FCC Registration Number (FRN): **0004372322** |
|---|---|---|---|
| ☐ Individual Name: | First | MI  Last | Suffix |
| FCC Registration Number (FRN): | | | |

**15) Agreement Identifier:**  Action Requested: ☐ Add  ☐ Delete

Type of Agreement:  ☐ Collusion-Based  ☐ Designated Entity  ☒ Other (Description of Type of Agreement)_____   **Form 175 Agreement**

| Agreement Name: | **License Purchase Agreement** |
|---|---|

**Party(ies) to Agreement(s)**

Action Requested:  ☐ Add  ☐ Delete

| ☒ Entity Name: | Legal Entity Name  **Whidby Telephone Company** | | FCC Registration Number (FRN):  **0004321451** |
|---|---|---|---|
| ☐ Individual Name: | First | MI   Last | Suffix |
| FCC Registration Number (FRN): | | | |

Action Requested:  ☐ Add  ☐ Delete

| ☒ Entity Name: | Legal Entity Name  **United States Cellular Corporation** | | FCC Registration Number (FRN):  **0004372322** |
|---|---|---|---|
| ☐ Individual Name: | First | MI   Last | Suffix |
| FCC Registration Number (FRN): | | | |

**Designated Entity/Closed Bidding Agreement Info**

| 16) Have you entered into any agreements which would impact your Designated Entity or closed bidding status? If 'Y', attach an exhibit. | ( N ) Yes    No |
|---|---|

**17) Additional Demographic Information (Not Required)**

Applicant Status:

☐ Minority Owned Business          ☐ Rural Telephone Company          ☐ Woman Owned Business

**Revenue and Asset Information**

| 18) Has any Revenue and Asset information changed for the Applicant, the Disclosable Interest Holder, or the Affiliate? If 'Y', explain why in an exhibit. | ( N ) Yes    No |
|---|---|

**19)   Revenue and Asset Information for the Applicant**
**Purpose (Check Modify and complete all changes different from previously filed FCC Form 175)**

☐ Modify

**Gross Revenue Disclosure Most Recent Reportable Year**

| 20a) Were the Applicant and any predecessors-in-interest in existence for a full year of the relevant period? If 'N', explain why in an attachment. | ( N ) Yes  No |
|---|---|

If 'Y', provide the following information.

20b) Gross Revenues                $_____  (Format:  99,999.99)

20c) Year End Date:                  _____ (Date Format:  MM/DD/YYYY)

**One Year Prior to Most Recent Reportable Year**

| 21a) Were the Applicant and any predecessors-in-interest in existence for a full year of the relevant period? If 'N', explain why in an attachment. | ( N ) Yes  No |
|---|---|

If 'Y', provide the following information.

21b) Gross Revenues                $_____  (Format:  99,999.99)

21c) Year End Date:                  _____ (Date Format:  MM/DD/YYYY)

**Two Years Prior to Most Recent Reportable Year**

| 22a) Were the Applicant and any predecessors-in-interest in existence for a full year of the relevant period? If 'N', explain why in an attachment. | ( N ) Yes  No |
|---|---|

If 'Y', provide the following information.

22b) Gross Revenues                $_____  (Format:  99,999.99)

22c) Year End Date:                  _____ (Date Format:  MM/DD/YYYY)

**Average Gross Revenue**

| 23) Average Gross Revenue of Reported Years:  $_____          (Format:  99,999.99) |
|---|

**Asset Disclosure**

| 24) Total Assets as of Application Filing Deadline:  $_____(Format:  99,999.99) |
|---|

**Financial Statement**

25)  Audited or Unaudited (Check One)

☐ The Applicant used audited financial statements.

☒ The Applicant used unaudited financial statements prepared in accordance with Generally Accepted Accounting Principles (GAAP) and certified by the Applicant's chief financial officer or the equivalent.

**FCC 601**
**Schedule B**

**26) Revenue and Asset Information for the Disclosable Interest Holder (DIH)**
**Purpose (Select One)**

| ☐ Add | ☐ Modify | ☐ Delete |
|---|---|---|

**27) Disclosable Interest Holder**

| ☐ Entity Name: | | | | FCC Registration Number (FRN): |
|---|---|---|---|---|
| ☒ Individual Name: First **Allison** | MI | Last **Cryor DiNardo** | Suffix | FCC Registration Number (FRN): **0012863643** |

**Gross Revenue Disclosure Most Recent Reportable Year**

28a) Were the DIH and any predecessors-in-interest in existence for a full year of the relevant period?  If 'N', explain why in an attachment.   ( **Y** ) Yes   No

If 'Y', provide the following information.

28b) Gross Revenues           $_____**0.00**_____           (Format:  99,999.99)

28c) Year End Date:           **12/31/2006**_____           (Date Format:  MM/DD/YYYY)

**One Year Prior to Most Recent Reportable Year**

29a) Were the DIH and any predecessors-in-interest in existence for a full year of the relevant period?  If 'N', explain why in an attachment.   ( **Y** ) Yes   No

If 'Y', provide the following information.

29b) Gross Revenues           $_**0.00**_____           (Format:  99,999.99)

29c) Year End Date:           **12/31/2005**_____           (Date Format:  MM/DD/YYYY)

**Two Years Prior to Most Recent Reportable Year**

30a) Were the DIH and any predecessors-in-interest in existence for a full year of the relevant period?  If 'N', explain why in an attachment.   ( **Y** ) Yes   No

If 'Y', provide the following information.

30b) Gross Revenues           $_**0.00**_____           (Format:  99,999.99)

30c) Year End Date:           **12/31/2004**_____           (Date Format:  MM/DD/YYYY)

**Average Gross Revenue**

31) Average Gross Revenue of Reported Years:  $_**0.00**_____           (Format:  99,999.99)

**Asset Disclosure**

32) Total Assets as of Application Filing Deadline:  $_____           (Format:  99,999.99)

**Financial Statement**

33) Audited or Unaudited (Check One)

☐ The Disclosable Interest Holder used audited financial statements.

☒ The Disclosable Interest Holder used unaudited financial statements prepared in accordance with Generally Accepted Accounting Principles (GAAP) and certified by the Applicant's chief financial officer or the equivalent.

**FCC 601**
**Schedule B**

**26) Revenue and Asset Information for the Disclosable Interest Holder (DIH)**
**Purpose (Select One)**

| ☐ Add | ☐ Modify | ☐ Delete |
|---|---|---|

**27) Disclosable Interest Holder**

| ☒ Entity Name:  **King Street Wireless, Inc.** | FCC Registration Number (FRN): **0017169376** |
|---|---|

| ☐ Individual Name: First | MI | Last | Suffix | FCC Registration Number (FRN): |
|---|---|---|---|---|

**Gross Revenue Disclosure Most Recent Reportable Year**

| 28a) Were the DIH and any predecessors-in-interest in existence for a full year of the relevant period?  If 'N', explain why in an attachment. | ( **N** ) Yes  No |
|---|---|

If 'Y', provide the following information.

28b) Gross Revenues             $_____ (Format: 99,999.99)

28c) Year End Date:             _____ (Date Format: MM/DD/YYYY)

**One Year Prior to Most Recent Reportable Year**

| 29a) Were the DIH and any predecessors-in-interest in existence for a full year of the relevant period?  If 'N', explain why in an attachment. | ( **N** ) Yes  No |
|---|---|

If 'Y', provide the following information.

29b) Gross Revenues             $_____ (Format: 99,999.99)

29c) Year End Date:             _____ (Date Format: MM/DD/YYYY)

**Two Years Prior to Most Recent Reportable Year**

| 30a) Were the DIH and any predecessors-in-interest in existence for a full year of the relevant period?  If 'N', explain why in an attachment. | ( **N** ) Yes  No |
|---|---|

If 'Y', provide the following information.

30b) Gross Revenues             $_____ (Format: 99,999.99)

30c) Year End Date:             _____ (Date Format: MM/DD/YYYY)

**Average Gross Revenue**

31) Average Gross Revenue of Reported Years:  $_____ (Format: 99,999.99)

**Asset Disclosure**

32) Total Assets as of Application Filing Deadline:  $_____ (Format: 99,999.99)

**Financial Statement**

33) Audited or Unaudited (Check One)

☐ The Disclosable Interest Holder used audited financial statements.

☒ The Disclosable Interest Holder used unaudited financial statements prepared in accordance with Generally Accepted Accounting Principles (GAAP) and certified by the Applicant's chief financial officer or the equivalent.

**FCC 601**
**Schedule B**

**26) Revenue and Asset Information for the Disclosable Interest Holder (DIH)**
**Purpose (Select One)**

| ☐ Add | ☐ Modify | ☐ Delete |
|---|---|---|

**27) Disclosable Interest Holder**

| ☒ Entity Name:  **USCC Wireless Investment, Inc.** | FCC Registration Number (FRN): |
|---|---|

| ☐ Individual Name: First | MI | Last | Suffix | FCC Registration Number (FRN): |
|---|---|---|---|---|

**Gross Revenue Disclosure Most Recent Reportable Year**

| 28a) Were the DIH and any predecessors-in-interest in existence for a full year of the relevant period?  If 'N', explain why in an attachment. | (     ) **Y**es   **N**o |
|---|---|

If 'Y', provide the following information.

28b) Gross Revenues                $_____ (Format:  99,999.99)

28c) Year End Date:                 _____ (Date Format:  MM/DD/YYYY)

**One Year Prior to Most Recent Reportable Year**

| 29a) Were the DIH and any predecessors-in-interest in existence for a full year of the relevant period?  If 'N', explain why in an attachment. | (     ) **Y**es   **N**o |
|---|---|

If 'Y', provide the following information.

29b) Gross Revenues                $_____ (Format:  99,999.99)

29c) Year End Date:                 _____ (Date Format:  MM/DD/YYYY)

**Two Years Prior to Most Recent Reportable Year**

| 30a) Were the DIH and any predecessors-in-interest in existence for a full year of the relevant period?  If 'N', explain why in an attachment. | (     ) **Y**es   **N**o |
|---|---|

If 'Y', provide the following information.

30b) Gross Revenues                $_____ (Format:  99,999.99)

30c) Year End Date:                 _____ (Date Format:  MM/DD/YYYY)

**Average Gross Revenue**

| 31) Average Gross Revenue of Reported Years:  $_____ (Format:  99,999.99) |
|---|

**Asset Disclosure**

| 32) Total Assets as of Application Filing Deadline:  $_____ (Format:  99,999.99) |
|---|

**Financial Statement**

33) Audited or Unaudited (Check One)

☐ The Disclosable Interest Holder used audited financial statements.

☐ The Disclosable Interest Holder used unaudited financial statements prepared in accordance with Generally Accepted Accounting Principles (GAAP) and certified by the Applicant's chief financial officer or the equivalent.

**FCC 601**
**Schedule B**

**26) Revenue and Asset Information for the Disclosable Interest Holder (DIH)**
**Purpose (Select One)**

| ☐ Add | ☐ Modify | ☐ Delete |
|---|---|---|

**27) Disclosable Interest Holder**

| ☒ Entity Name:  **United States Cellular Corporation** | FCC Registration Number (FRN): |
|---|---|

| ☐ Individual Name: First | MI | Last | Suffix | FCC Registration Number (FRN): |
|---|---|---|---|---|

**Gross Revenue Disclosure Most Recent Reportable Year**

| 28a) Were the DIH and any predecessors-in-interest in existence for a full year of the relevant period?  If 'N', explain why in an attachment. | (    ) Yes  **No** |
|---|---|

If 'Y', provide the following information.

28b) Gross Revenues                      $_____ (Format:  99,999.99)

28c) Year End Date:               _____ (Date Format:  MM/DD/YYYY)

**One Year Prior to Most Recent Reportable Year**

| 29a) Were the DIH and any predecessors-in-interest in existence for a full year of the relevant period?  If 'N', explain why in an attachment. | (    ) Yes  **No** |
|---|---|

If 'Y', provide the following information.

29b) Gross Revenues                      $_____ (Format:  99,999.99)

29c) Year End Date:               _____ (Date Format:  MM/DD/YYYY)

**Two Years Prior to Most Recent Reportable Year**

| 30a) Were the DIH and any predecessors-in-interest in existence for a full year of the relevant period?  If 'N', explain why in an attachment. | (    ) Yes  **No** |
|---|---|

If 'Y', provide the following information.

30b) Gross Revenues                      $_____ (Format:  99,999.99)

30c) Year End Date:               _____ (Date Format:  MM/DD/YYYY)

**Average Gross Revenue**

| 31) Average Gross Revenue of Reported Years:  $_____ (Format:  99,999.99) |
|---|

**Asset Disclosure**

| 32) Total Assets as of Application Filing Deadline:  $_____ (Format:  99,999.99) |
|---|

**Financial Statement**

| 33) Audited or Unaudited (Check One)
☐ The Disclosable Interest Holder used audited financial statements.
☐ The Disclosable Interest Holder used unaudited financial statements prepared in accordance with Generally Accepted Accounting Principles (GAAP) and certified by the Applicant's chief financial officer or the equivalent. |
|---|

**FCC 601**
**Schedule B**

**26) Revenue and Asset Information for the Disclosable Interest Holder (DIH)**
**Purpose (Select One)**

| ☐ Add | ☐ Modify | ☐ Delete |
|---|---|---|

**27) Disclosable Interest Holder**

| ☒ Entity Name:  **Telephone and Data Systems, Inc.** | | | | FCC Registration Number (FRN): |
|---|---|---|---|---|
| ☐ Individual Name: First | MI | Last | Suffix | FCC Registration Number (FRN): |

**Gross Revenue Disclosure Most Recent Reportable Year**

| 28a) Were the DIH and any predecessors-in-interest in existence for a full year of the relevant period?  If 'N', explain why in an attachment. | (     ) <u>Y</u>es  **No** |
|---|---|

If 'Y', provide the following information.

28b) Gross Revenues                    $_____ (Format:  99,999.99)

28c) Year End Date:              _____(Date Format:  MM/DD/YYYY)

**One Year Prior to Most Recent Reportable Year**

| 29a) Were the DIH and any predecessors-in-interest in existence for a full year of the relevant period?  If 'N', explain why in an attachment. | (     ) <u>Y</u>es  **No** |
|---|---|

If 'Y', provide the following information.

29b) Gross Revenues                    $_____ (Format:  99,999.99)

29c) Year End Date:              _____(Date Format:  MM/DD/YYYY)

**Two Years Prior to Most Recent Reportable Year**

| 30a) Were the DIH and any predecessors-in-interest in existence for a full year of the relevant period?  If 'N', explain why in an attachment. | (     ) <u>Y</u>es  **No** |
|---|---|

If 'Y', provide the following information.

30b) Gross Revenues                    $_____ (Format:  99,999.99)

30c) Year End Date:              _____(Date Format:  MM/DD/YYYY)

**Average Gross Revenue**

31) Average Gross Revenue of Reported Years:  $_____ (Format:  99,999.99)

**Asset Disclosure**

32) Total Assets as of Application Filing Deadline:  $_____ (Format:  99,999.99)

**Financial Statement**

33) Audited or Unaudited (Check One)

☐ The Disclosable Interest Holder used audited financial statements.

☐ The Disclosable Interest Holder used unaudited financial statements prepared in accordance with Generally Accepted Accounting Principles (GAAP) and certified by the Applicant's chief financial officer or the equivalent.

**FCC 601**
**Schedule B**

**26) Revenue and Asset Information for the Disclosable Interest Holder (DIH)**
**Purpose (Select One)**

| ☐ Add | ☐ Modify | ☐ Delete |
|---|---|---|

**27) Disclosable Interest Holder**

| ☒ Entity Name:   **Voting Trust - Telephone and Data Systems, Inc.** | | | | FCC Registration Number (FRN): |
|---|---|---|---|---|
| ☐ Individual Name: First | MI | Last | Suffix | FCC Registration Number (FRN): |

**Gross Revenue Disclosure Most Recent Reportable Year**

| 28a) Were the DIH and any predecessors-in-interest be in existence for a full year of the relevant period?  If 'N', explain why in an attachment. | (      ) Yes   No |
|---|---|

If 'Y', provide the following information.

28b) Gross Revenues                    $_____  (Format: 99,999.99)

28c) Year End Date:                    _____ (Date Format:  MM/DD/YYYY)

**One Year Prior to Most Recent Reportable Year**

| 29a) Were the DIH and any predecessors-in-interest in existence for a full year of the relevant period?  If 'N', explain why in an attachment. | (      ) Yes   No |
|---|---|

If 'Y', provide the following information.

29b) Gross Revenues                    $_____  (Format: 99,999.99)

29c) Year End Date:                    _____ (Date Format:  MM/DD/YYYY)

**Two Years Prior to Most Recent Reportable Year**

| 30a) Were the DIH and any predecessors-in-interest in existence for a full year of the relevant period?  If 'N', explain why in an attachment. | (      ) Yes   No |
|---|---|

If 'Y', provide the following information.

30b) Gross Revenues                    $_____  (Format: 99,999.99)

30c) Year End Date:                    _____ (Date Format:  MM/DD/YYYY)

**Average Gross Revenue**

31) Average Gross Revenue of Reported Years:  $_____ (Format:  99,999.99)

**Asset Disclosure**

32) Total Assets as of Application Filing Deadline:  $_____ (Format:  99,999.99)

**Financial Statement**

33) Audited or Unaudited (Check One)

☐  The Disclosable Interest Holder used audited financial statements.

☐  The Disclosable Interest Holder used unaudited financial statements prepared in accordance with Generally Accepted Accounting Principles
   (GAAP) and certified by the Applicant's chief financial officer or the equivalent.

**FCC 601**
**Schedule B**

**26) Revenue and Asset Information for the Disclosable Interest Holder (DIH)**
**Purpose (Select One)**

| ☐ Add | ☐ Modify | ☐ Delete |
|-------|----------|----------|

**27) Disclosable Interest Holder**

| ☐ Entity Name: | | | | FCC Registration Number (FRN): |
|---|---|---|---|---|
| ☒ Individual Name: First **LeRoy** | MI **T** | Last **Carlson** | Suffix | FCC Registration Number (FRN): |

**Gross Revenue Disclosure Most Recent Reportable Year**

| 28a) Were the DIH and any predecessors-in-interest in existence for a full year of the relevant period?  If 'N', explain why in an attachment. | (        ) Yes   **No** |
|---|---|
| If 'Y', provide the following information. | |
| 28b) Gross Revenues              $_____ (Format:  99,999.99) | |
| 28c) Year End Date:              _____ (Date Format:  MM/DD/YYYY) | |

**One Year Prior to Most Recent Reportable Year**

| 29a) Were the DIH and any predecessors-in-interest in existence for a full year of the relevant period?  If 'N', explain why in an attachment. | (        ) Yes   **No** |
|---|---|
| If 'Y', provide the following information. | |
| 29b) Gross Revenues              $_____ (Format:  99,999.99) | |
| 29c) Year End Date:              _____ (Date Format:  MM/DD/YYYY) | |

**Two Years Prior to Most Recent Reportable Year**

| 30a) Were the DIH and any predecessors-in-interest in existence for a full year of the relevant period?  If 'N', explain why in an attachment. | (        ) Yes   **No** |
|---|---|
| If 'Y', provide the following information. | |
| 30b) Gross Revenues              $_____ (Format:  99,999.99) | |
| 30c) Year End Date:              _____ (Date Format:  MM/DD/YYYY) | |

**Average Gross Revenue**

| 31) Average Gross Revenue of Reported Years:  $_____ (Format:  99,999.99) |
|---|

**Asset Disclosure**

| 32) Total Assets as of Application Filing Deadline:  $_____ (Format:  99,999.99) |
|---|

**Financial Statement**

| 33) Audited or Unaudited (Check One) |
|---|
| ☐ The Disclosable Interest Holder used audited financial statements. |
| ☐ The Disclosable Interest Holder used unaudited financial statements prepared in accordance with Generally Accepted Accounting Principles (GAAP) and certified by the Applicant's chief financial officer or the equivalent. |

**FCC 601**
**Schedule B**

**26) Revenue and Asset Information for the Disclosable Interest Holder (DIH)**
**Purpose (Select One)**

| ☐ Add | ☐ Modify | ☐ Delete |
|---|---|---|

**27) Disclosable Interest Holder**

| ☐ Entity Name: | FCC Registration Number (FRN): |
|---|---|

| ☒ Individual Name: First **Walter C.D.** | MI | Last **Carlson** | Suffix | FCC Registration Number (FRN): |
|---|---|---|---|---|

**Gross Revenue Disclosure Most Recent Reportable Year**

| 28a) Were the DIH and any predecessors-in-interest in existence for a full year of the relevant period?  If 'N', explain why in an attachment. | (      ) **Y**es   **N**o |
|---|---|

If 'Y', provide the following information.

28b) Gross Revenues                    $_____   (Format: 99,999.99)

28c) Year End Date:                    _____ (Date Format:  MM/DD/YYYY)

**One Year Prior to Most Recent Reportable Year**

| 29a) Were the DIH and any predecessors-in-interest in existence for a full year of the relevant period?  If 'N', explain why in an attachment. | (      ) **Y**es   **N**o |
|---|---|

If 'Y', provide the following information.

29b) Gross Revenues                    $_____   (Format: 99,999.99)

29c) Year End Date:                    _____ (Date Format:  MM/DD/YYYY)

**Two Years Prior to Most Recent Reportable Year**

| 30a) Were the DIH and any predecessors-in-interest in existence for a full year of the relevant period?  If 'N', explain why in an attachment. | (      ) **Y**es   **N**o |
|---|---|

If 'Y', provide the following information.

30b) Gross Revenues                    $_____   (Format: 99,999.99)

30c) Year End Date:                    _____ (Date Format:  MM/DD/YYYY)

**Average Gross Revenue**

| 31) Average Gross Revenue of Reported Years:  $_____ (Format:  99,999.99) |
|---|

**Asset Disclosure**

| 32) Total Assets as of Application Filing Deadline:  $_____ (Format:  99,999.99) |
|---|

**Financial Statement**

| 33) Audited or Unaudited (Check One) |
|---|

☐ The Disclosable Interest Holder used audited financial statements.

☐ The Disclosable Interest Holder used unaudited financial statements prepared in accordance with Generally Accepted Accounting Principles (GAAP) and certified by the Applicant's chief financial officer or the equivalent.

**FCC 601**
**Schedule B**

**26) Revenue and Asset Information for the Disclosable Interest Holder (DIH)**
**Purpose (Select One)**

| ☐ Add | ☐ Modify | ☐ Delete |
|---|---|---|

**27) Disclosable Interest Holder**

| ☐ Entity Name: | | | | | FCC Registration Number (FRN): |
|---|---|---|---|---|---|
| ☒ Individual Name: First **Prudence** | MI **E** | Last **Carlson** | | Suffix | FCC Registration Number (FRN): |

**Gross Revenue Disclosure Most Recent Reportable Year**

| 28a) Were the DIH and any predecessors-in-interest in existence for a full year of the relevant period?  If 'N', explain why in an attachment. | (      ) <u>Y</u>es   <u>N</u>o |
|---|---|
| If 'Y', provide the following information. | |
| 28b) Gross Revenues              $_____ (Format:  99,999.99) | |
| 28c) Year End Date:            _____ (Date Format:  MM/DD/YYYY) | |

**One Year Prior to Most Recent Reportable Year**

| 29a) Were the DIH and any predecessors-in-interest in existence for a full year of the relevant period?  If 'N', explain why in an attachment. | (      ) <u>Y</u>es   <u>N</u>o |
|---|---|
| If 'Y', provide the following information. | |
| 29b) Gross Revenues              $_____ (Format:  99,999.99) | |
| 29c) Year End Date:            _____ (Date Format:  MM/DD/YYYY) | |

**Two Years Prior to Most Recent Reportable Year**

| 30a) Were the DIH and any predecessors-in-interest in existence for a full year of the relevant period?  If 'N', explain why in an attachment. | (      ) <u>Y</u>es   <u>N</u>o |
|---|---|
| If 'Y', provide the following information. | |
| 30b) Gross Revenues              $_____ (Format:  99,999.99) | |
| 30c) Year End Date:            _____ (Date Format:  MM/DD/YYYY) | |

**Average Gross Revenue**

| 31) Average Gross Revenue of Reported Years:  $_____ (Format:  99,999.99) |
|---|

**Asset Disclosure**

| 32) Total Assets as of Application Filing Deadline:  $_____ (Format:  99,999.99) |
|---|

**Financial Statement**

| 33) Audited or Unaudited (Check One) |
|---|
| ☐ The Disclosable Interest Holder used audited financial statements. |
| ☐ The Disclosable Interest Holder used unaudited financial statements prepared in accordance with Generally Accepted Accounting Principles (GAAP) and certified by the Applicant's chief financial officer or the equivalent. |

**FCC 601**
**Schedule B**

**26) Revenue and Asset Information for the Disclosable Interest Holder (DIH)**
**Purpose (Select One)**

| ☐ Add | ☐ Modify | ☐ Delete |
|---|---|---|

**27) Disclosable Interest Holder**

| ☐ Entity Name: | | | | FCC Registration Number (FRN): |
|---|---|---|---|---|
| ☒ Individual Name: First **Dr. Letitia G.C.** | MI | Last **Carlson** | Suffix | FCC Registration Number (FRN): |

**Gross Revenue Disclosure Most Recent Reportable Year**

| 28a) Were the DIH and any predecessors-in-interest in existence for a full year of the relevant period?  If 'N', explain why in an attachment. | (     ) **Y**es  **N**o |
|---|---|

If 'Y', provide the following information.

28b) Gross Revenues          $_____  (Format:  99,999.99)

28c) Year End Date:          _____ (Date Format:  MM/DD/YYYY)

**One Year Prior to Most Recent Reportable Year**

| 29a) Were the DIH and any predecessors-in-interest in existence for a full year of the relevant period?  If 'N', explain why in an attachment. | (     ) **Y**es  **N**o |
|---|---|

If 'Y', provide the following information.

29b) Gross Revenues          $_____  (Format:  99,999.99)

29c) Year End Date:          _____ (Date Format:  MM/DD/YYYY)

**Two Years Prior to Most Recent Reportable Year**

| 30a) Were the DIH and any predecessors-in-interest in existence for a full year of the relevant period?  If 'N', explain why in an attachment. | (     ) **Y**es  **N**o |
|---|---|

If 'Y', provide the following information.

30b) Gross Revenues          $_____  (Format:  99,999.99)

30c) Year End Date:          _____ (Date Format:  MM/DD/YYYY)

**Average Gross Revenue**

| 31) Average Gross Revenue of Reported Years:  $_____  (Format:  99,999.99) |
|---|

**Asset Disclosure**

| 32) Total Assets as of Application Filing Deadline:  $_____  (Format:  99,999.99) |
|---|

**Financial Statement**

33) Audited or Unaudited (Check One)

☐ The Disclosable Interest Holder used audited financial statements.

☐ The Disclosable Interest Holder used unaudited financial statements prepared in accordance with Generally Accepted Accounting Principles (GAAP) and certified by the Applicant's chief financial officer or the equivalent.

**FCC 601**
**Schedule B**

**34) Revenue and Asset Information for the Affiliate**
**Purpose (Select One)**

| ☐ Add | ☐ Modify | ☐ Delete |
|---|---|---|

**35) Affiliate**

| ☒ Entity Name:   **Barat Wireless, L.P.** | FCC Registration Number (FRN): **0015019003** |
|---|---|

| ☐ Individual Name: First | MI | Last | Suffix | FCC Registration Number (FRN): |
|---|---|---|---|---|

**Gross Revenue Disclosure Most Recent Reportable Year**

| 36a) Were the Affiliate and any predecessors-in-interest in existence for a full year of the relevant period?  If 'N', explain why in an attachment. | ( **N** ) <u>Y</u>es  <u>N</u>o |
|---|---|

If 'Y', provide the following information.

36b) Gross Revenues          $_____ (Format:  99,999.99)

36c) Year End Date:          _____ (Date Format:  MM/DD/YYYY)

**One Year Prior to Most Recent Reportable Year**

| 37a) Were the Affiliate and any predecessors-in-interest in existence for a full year of the relevant period?  If 'N', explain why in an attachment. | ( **N** ) <u>Y</u>es  <u>N</u>o |
|---|---|

If 'Y', provide the following information.

37b) Gross Revenues          $_____ (Format:  99,999.99)

37c) Year End Date:          _____ (Date Format:  MM/DD/YYYY)

**Two Years Prior to Most Recent Reportable Year**

| 38a) Were the Affiliate and any predecessors-in-interest in existence for a full year of the relevant period?  If 'N', explain why in an attachment. | ( **N** ) <u>Y</u>es  <u>N</u>o |
|---|---|

If 'Y', provide the following information.

38b) Gross Revenues          $_____ (Format:  99,999.99)

38c) Year End Date:          _____ (Date Format:  MM/DD/YYYY)

**Average Gross Revenue**

39) Average Gross Revenue of Reported Years:  $_____ (Format:  99,999.99)

**Asset Disclosure**

40) Total Assets as of Application Filing Deadline:  $_____ (Format:  99,999.99)

**Financial Statement**

41) Audited or Unaudited (Check One)

☐ The Affiliate used audited financial statements.

☒ The Affiliate used unaudited financial statements prepared in accordance with Generally Accepted Accounting Principles (GAAP) and certified by the Applicant's chief financial officer or the equivalent.

**FCC 601**
**Schedule B**

**34) Revenue and Asset Information for the Affiliate**
**Purpose (Select One)**

| ☐ Add | ☐ Modify | ☐ Delete |
|---|---|---|

**35) Affiliate**

| ☒ Entity Name:  **Barat Wireless, Inc.** | FCC Registration Number (FRN): **0015019029** |
|---|---|
| ☐ Individual Name: First | MI | Last | Suffix | FCC Registration Number (FRN): |

**Gross Revenue Disclosure Most Recent Reportable Year**

| 36a) Were the Affiliate and any predecessors-in-interest in existence for a full year of the relevant period?  If 'N', explain why in an attachment. | ( **N** ) <u>Y</u>es  <u>N</u>o |
|---|---|

If 'Y', provide the following information.

36b) Gross Revenues             $_____ (Format:  99,999.99)

36c) Year End Date:             _____ (Date Format:  MM/DD/YYYY)

**One Year Prior to Most Recent Reportable Year**

| 37a) Were the Affiliate and any predecessors-in-interest in existence for a full year of the relevant period?  If 'N', explain why in an attachment. | ( **N** ) <u>Y</u>es  <u>N</u>o |
|---|---|

If 'Y', provide the following information.

37b) Gross Revenues             $_____ (Format:  99,999.99)

37c) Year End Date:             _____ (Date Format:  MM/DD/YYYY)

**Two Years Prior to Most Recent Reportable Year**

| 38a) Were the Affiliate and any predecessors-in-interest in existence for a full year of the relevant period?  If 'N', explain why in an attachment. | ( **N** ) <u>Y</u>es  <u>N</u>o |
|---|---|

If 'Y', provide the following information.

38b) Gross Revenues             $_____ (Format:  99,999.99)

38c) Year End Date:             _____ (Date Format:  MM/DD/YYYY)

**Average Gross Revenue**

| 39) Average Gross Revenue of Reported Years:  $_____ (Format:  99,999.99) |
|---|

**Asset Disclosure**

| 40) Total Assets as of Application Filing Deadline:  $_____ (Format:  99,999.99) |
|---|

**Financial Statement**

41) Audited or Unaudited (Check One)

☐  The Affiliate used audited financial statements.

☒  The Affiliate used unaudited financial statements prepared in accordance with Generally Accepted Accounting Principles (GAAP) and certified by the Applicant's chief financial officer or the equivalent.

**FCC 601**
**Schedule B**

**34) Revenue and Asset Information for the Affiliate**
**Purpose (Select One)**

| ☐ Add | ☐ Modify | ☐ Delete |
|---|---|---|

**35) Affiliate**

| ☒ Entity Name:   **Carroll Wireless, LP** | FCC Registration Number (FRN): **0012184834** |
|---|---|
| ☐ Individual Name: First | MI | Last | Suffix | FCC Registration Number (FRN): |

**Gross Revenue Disclosure Most Recent Reportable Year**

| 36a) Were the Affiliate and any predecessors-in-interest in existence for a full year of the relevant period?  If 'N', explain why in an attachment. | ( **Y** ) <u>Y</u>es  <u>N</u>o |
|---|---|
| If 'Y', provide the following information. | |
| 36b) Gross Revenues                 $__**0.00**_____   (Format:  99,999.99) | |
| 36c) Year End Date:               **12/31/2006**_____   (Date Format:  MM/DD/YYYY) | |

**One Year Prior to Most Recent Reportable Year**

| 37a) Were the Affiliate and any predecessors-in-interest in existence for a full year of the relevant period?  If 'N', explain why in an attachment. | ( **Y** ) <u>Y</u>es  <u>N</u>o |
|---|---|
| If 'Y', provide the following information. | |
| 37b) Gross Revenues                 $__**0.00**_____   (Format:  99,999.99) | |
| 37c) Year End Date:               **12/31/2005**_____   (Date Format:  MM/DD/YYYY) | |

**Two Years Prior to Most Recent Reportable Year**

| 38a) Were the Affiliate and any predecessors-in-interest in existence for a full year of the relevant period?  If 'N', explain why in an attachment. | ( **Y** ) <u>Y</u>es  <u>N</u>o |
|---|---|
| If 'Y', provide the following information. | |
| 38b) Gross Revenues                 $__**0.00**_____   (Format:  99,999.99) | |
| 38c) Year End Date:               **12/31/2004**_____   (Date Format:  MM/DD/YYYY) | |

**Average Gross Revenue**

| 39) Average Gross Revenue of Reported Years:  $__**0.00**_____   (Format:  99,999.99) |
|---|

**Asset Disclosure**

| 40) Total Assets as of Application Filing Deadline:  $_____   (Format:  99,999.99) |
|---|

**Financial Statement**

| 41) Audited or Unaudited (Check One) |
|---|
| ☐ The Affiliate used audited financial statements. |
| ☒ The Affiliate used unaudited financial statements prepared in accordance with Generally Accepted Accounting Principles (GAAP) and certified by the Applicant's chief financial officer or the equivalent. |

**FCC 601**
**Schedule B**

**34) Revenue and Asset Information for the Affiliate**
**Purpose (Select One)**

| ☐ Add | ☐ Modify | ☐ Delete |
|---|---|---|

**35) Affiliate**

| ☒ Entity Name:   **Carroll PCS, Inc.** | FCC Registration Number (FRN): **0012863650** |
|---|---|

| ☐ Individual Name: First | MI | Last | Suffix | FCC Registration Number (FRN): |
|---|---|---|---|---|

**Gross Revenue Disclosure Most Recent Reportable Year**

| 36a) Were the Affiliate and any predecessors-in-interest in existence for a full year of the relevant period?  If 'N', explain why in an attachment. | ( Y ) Yes  No |
|---|---|

If 'Y', provide the following information.

36b) Gross Revenues          $__50,000.00__          (Format:  99,999.99)

36c) Year End Date:          __12/31/2006__          (Date Format:  MM/DD/YYYY)

**One Year Prior to Most Recent Reportable Year**

| 37a) Were the Affiliate and any predecessors-in-interest in existence for a full year of the relevant period?  If 'N', explain why in an attachment. | ( Y ) Yes  No |
|---|---|

If 'Y', provide the following information.

37b) Gross Revenues          $__0.00__          (Format:  99,999.99)

37c) Year End Date:          __12/31/2005__          (Date Format:  MM/DD/YYYY)

**Two Years Prior to Most Recent Reportable Year**

| 38a) Were the Affiliate and any predecessors-in-interest in existence for a full year of the relevant period?  If 'N', explain why in an attachment. | ( Y ) Yes  No |
|---|---|

If 'Y', provide the following information.

38b) Gross Revenues          $__0.00__          (Format:  99,999.99)

38c) Year End Date:          __12/31/2004__          (Date Format:  MM/DD/YYYY)

**Average Gross Revenue**

39) Average Gross Revenue of Reported Years:  $__16,666.67__          (Format:  99,999.99)

**Asset Disclosure**

40) Total Assets as of Application Filing Deadline:  $_____          (Format:  99,999.99)

**Financial Statement**

41) Audited or Unaudited (Check One)

☐ The Affiliate used audited financial statements.

☒ The Affiliate used unaudited financial statements prepared in accordance with Generally Accepted Accounting Principles (GAAP) and certified by the Applicant's chief financial officer or the equivalent.

**FCC 601**
**Schedule B**

## Closed Bidding/Designated Entity Eligibility

**Total Gross Revenues for Most Recent Reportable Year**

42a) Gross Revenues           $ 50,000.00 _____ (Format:  99,999.99)

42b) Year End Date:           _____ (Date Format:  MM/DD/YYYY)

**Total Gross Revenues for One Year Prior to Most Recent Reportable Year**

43a) Gross Revenues:          $ 0.00 _____ (Format:  99,999.99)

43b) Year End Date:           _____ (Date Format:  MM/DD/YYYY)

**Total Gross Revenues for Two Years Prior to Most Recent Reportable Year**

44a) Gross Revenues:          $ 0.00 _____ (Format:  99,999.99)

44b) Year End Date:           _____ (Date Format:  MM/DD/YYYY)

**Total Aggregate Average Gross Revenues for Designated Entity**

45) Aggregate Average Gross Revenue:  $ 16,666.67 _____ (Format:  99,999.99)

**Total Aggregate Average Gross Revenues for Closed Bidding**

46) Aggregate Average Gross Revenue:  $_____ (Format:  99,999.99)

**Total Assets Disclosure for Closed Bidding**

47) Total Assets:            $_____ (Format:  99,999.99)

**Certifications** (By signing the Main Form, the applicant certifies that the statements listed are true, complete, correct and made in good faith)

**For Applicants Claiming Eligibility as an Entrepreneur Under the General Rule**

| |
|---|
| Applicant certifies that they are eligible to obtain the licenses for which they apply. |

**For Applicants Claiming Eligibility as a Publicly Traded Corporation**

| |
|---|
| Applicant certifies that they are eligible to obtain the licenses for which they apply and that they comply with the definition of a Publicly Traded Corporation, as set out in the applicable FCC rules. |

**For Applicants Claiming Eligibility using a Control Group Structure**

| |
|---|
| Applicant certifies that they are eligible to obtain the licenses for which they apply. |
| Applicant certifies that the applicant's sole control group member is a pre-existing entity, if applicable. |

**For Applicants Claiming Eligibility as a Very Small Business, Very Small Business Consortium, Small Business, or as a Small Business Consortium**

| |
|---|
| Applicant certifies that they are eligible to obtain the licenses for which they apply. |
| Applicant certifies that the applicant's sole control group member is a pre-existing entity, if applicable. |

**For Applicants Claiming Eligibility as a Rural Telephone Company**

| |
|---|
| Applicant certifies that they meet the definition of a Rural Telephone Company as set out in the applicable FCC rules, and must disclose all parties to agreement(s) to partition licenses won in this auction.  See applicable FCC rules. |

**For Applicants Claiming Tribal Lands Bidding Credit**

| |
|---|
| Applicant certifies that it will comply with the bidding credit buildout requirements and consult with the tribal government(s) regarding the siting of facilities and deployment of service on the tribal land(s) as set out in the applicable FCC rules. |

**For Auction Applicants**

| |
|---|
| Applicant provided separate gross revenue information for itself, for each of Applicant's officers and directors; for each of Applicant's other controlling interests; for each of Applicant's affiliates; and for each affiliate of each of Applicant's officers, directors, and other controlling interests. |
| Applicant provided separate gross revenue and total asset information for itself, for each of Applicant's officers and directors; for each of Applicant's other controlling interest; for each of Applicant's affiliates; and for each affiliate of each of Applicant's officers, directors, and other controlling interests. |

Attachment(s):

| Type | Description | Date Entered |
|------|-------------|--------------|
| N | Exhibit A - Ownership | 03/31/2008 |
| O | Exhibit D - Agreements & Other Instruments | 03/28/2008 |
| O | Exhibit E - Request for Confidentiality | 03/25/2008 |
| O | Exhibit C - Designated Entities | 03/25/2008 |

**KING STREET WIRELESS, L.P.**

**Exhibit A: Ownership**

*See* King Street Wireless, L.P.'s FCC Form 602 filed on March 31, 2008 (ULS File No. 0003379808).

**KING STREET WIRELESS, L.P.**

**Exhibit C: Designated Entities**

- ***Controlling Interests* –** King Street Wireless, L.P. ("Applicant") has the following controlling interests: King Street Wireless, Inc. ("KSWI") and Allison Cryor DiNardo. KSWI is the General Partner of the Applicant. Ms. Cryor DiNardo has both *de jure* and *de facto* control in KSWI. She owns a 100 percent of KSWI. Thus, she has a controlling interest in the Applicant.1  No other individual or entity has a controlling interest in the Applicant.

- ***Affiliates* –** Applicant does not have any affiliates, except for those entities listed in the application herein, which are affiliates of Allison Cryor DiNardo. The following entities are affiliates of Allison Cryor DiNardo by virtue of her having control over these entities: (1) King Street Wireless, L.P.; (2) King Street Wireless, Inc.; (3) Barat Wireless, L.P.; (4) Barat Wireless, Inc.; (5) Carroll Wireless, LP; and (6) Carroll PCS, Inc.

- ***Gross Revenues* –** As indicated in the application herein, Applicant and King Street Wireless, Inc. did not disclose any revenues for 2004, 2005, and 2006 because Applicant was not formed until November, 2007.

---

1    Allison Cryor DiNardo is the President of the General Partner. There are no other officers or directors of either the Applicant or the General Partner .

**KING STREET WIRELESS, L.P.**

**Exhibit D: Agreement and Other Instruments**

I.      **AGREEMENTS DISCLOSED PURSUANT TO SECTION 1.2105 OF THE COMMISSION'S RULES**:

      A.      **King Street Wireless, L.P. Agreements**

      King Street Wireless, L.P. ("King Street" or "Applicant") hereby certifies under penalty of perjury that, with respect to the licenses in Auction No. 73, except as set forth below, it has entered into no partnerships, joint venture, consortia or other agreements, arrangements or understandings of any kind with third parties relating to the licenses being auctioned, including any such agreements relating to the post-auction market structure. The exceptions are that Applicant, King Street Wireless, Inc., ("King Street Inc.") and USCC Wireless Investment, Inc. ("USCC Wireless") entered into a Bidding Protocol Agreement on December 21, 2007 ("Bidding Agreement") and King Street Inc., USCC Wireless, and United States Cellular Corporation ("USCC") entered into an Investment Agreement on December 21, 2007 ("Investment Agreement"). These Agreements, which were disclosed in King Street's Form 175 submission, are summarized below.

      B.      **Other Agreements**

      USCC, the parent of USCC Wireless, is a reportable member of King Street pursuant to FCC rule 1.2105(c)(6) because USCC owns an equity interest equal to or greater than 10% of King Street. USCC has not entered into partnerships, joint ventures, consortia or other agreements, arrangements or understandings of any kind relating to the licenses being auctioned, including any such agreements relating to the post-auction market structure, other than the following;

      1.      <u>AT&T Exchange Agreement</u>

      Pursuant to an Exchange Agreement, dated March 7, 2003, as amended as of May 28, 2003, and July 31, 2003 between AT&T Wireless Services, Inc. ("AWS") and United States Cellular Corporation ("USCC"), AWS and USCC agreed to exchange certain PCS licenses. The FCC approved the AWS-USCC license exchange on June 18, 2003. See <u>Public Notice</u>, DA 03-1993, released June 18, 2003 (WT Docket No. 03-113).

      However, with respect to certain licenses subject to the Exchange Agreement held by AWS or its subsidiaries, including the E Block license for the Burlington, VT BTA (KNLG 395) and a partitioned A Block license covering the counties comprising the Lebanon, NH BTA (WNJW 728), it was determined that the actual assignment to USCC would take place at a later time.

On September 12, 2007, before the short form filing deadline for Auction No. 73, New Cingular Wireless PCS, LLC ("New Cingular"), a successor in interest to AWS, and United States Cellular Operating Company, LLC, ("USCOC") a subsidiary of USCC, filed an application (Form 603) with the FCC seeking consent to assign the Burlington license to USCOC (File No. 003167764).

On October 10, 2007, the FCC released a <u>Public Notice</u> announcing a grant of the application.  See <u>Public Notice</u>, Report No. 3509.  The transaction closed on March 4, 2008.

2.      <u>Joint Bidding Agreement</u>

On November 30, 2007, United States Cellular Corporation ("USCC") and the Muskrat Wireless, L.P. ("Muskrat LP") entered into a Joint Bidding Agreement. USCC holds a 16.66% indirect non-controlling ownership interest in Muskrat LP.  The Joint Bidding Agreement provided that during Auction Nos. 73 and 76 certain employees of USCC would be privy to and participate in bidding decisions of Muskrat LP and that Muskrat LP would share bidding information with these employees of USCC such as its market selection, upfront payments, down payments, capital calls, requests for additional funds in support of bids and bidding limits. The Joint Bidding Agreement also provided that during this period Muskrat LP would not be made aware of the nature or extent of USCC's participation in Auction Nos. 73 and 76 or its intentions with respect to post auction market structure. Additionally, the USCC employees who were privy to Muskrat's bidding decisions were precluded from obtaining information about USCC's bids, bid strategies and other participation in Auction Nos. 73 and 76.

3.      <u>License Purchase Agreement</u>

Pursuant to a License Purchase Agreement dated December 3, 2007, between United States Cellular Corporation ("USCC") and Whidbey Telephone Corporation ("Whidbey"), Whidbey agreed to assign certain 700 MHz authorizations to USCC in the following Cellular Market Areas: Portland, ME NECMA (WPZA 245); Bangor, ME NECMA (WPZA 247); Maine RSA #1 (WPZA 248); Maine RSA #2 (WPZA 249); Maine RSA #3 (WPZA 250); and Maine RSA #4 (WPZA 251).

On December 14, 2007, an application (Form 603) was filed with the FCC seeking consent to assign those 700 MHz authorizations to USCC (File No. 0003251200).  On February 20, 2008, the FCC released a public notice announcing a grant of the application.  *See* Public Notice, Report No 3852A.  Closing of the transaction took place on March 28, 2008.

## II.      AGREEMENTS SUPPORTING STATUS AS A DESIGNATED ENTITY

Pursuant to Sections 1.2110(j), 1.2112(b)(2) and 27.502(b) of the Commission's Rules, King Street hereby lists and summarizes the agreements that supports its

qualifications as an Designated Entity entitled to a bidding credit of twenty-five (25) percent on its winning bids in Auction No. 73.

### A.    List of Agreements and Other Documents

1. Limited Partnership Agreement of King Street dated as of ecember 21, 2007 ("King Street Wireless LP Agreement")
2. Investment Agreement dated as of December 21, 2007
3. Bidding Protocol dated as of December 21, 2007
4. Loan Agreement dated as of December 21, 2007
5. Loan and Security Agreement dated as of December 21, 2007
6. Pledge Agreement from King Street Inc. dated as of December 21, 2007
7. Pledge Agreement from Shareholders of King Street Inc, dated as of December 21, 2007

### B.    Summary of Agreements[1]

1.    <u>King Street Wireless LP Agreement</u>

This Agreement, establishes Applicant as a Delaware Limited Partnership.  It provides that King Street Inc. is the sole general partner ("General Partner") and USCC Wireless is the sole limited partner ("Limited Partner").  It also provides that the purpose of Applicant is to construct and operate a 700 MHz wireless services system with respect to any 700 MHz licenses acquired in Auction No. 73.

King Street Inc. controls the Applicant.  Section 5.1 of the Agreement succinctly provides that

> [t]he General Partner at all times shall exercise control over the Partnership in compliance with the FCC Rules.  The General Partner shall have the exclusive right and power to manage, operate and control the Partnership and to make all decisions necessary or appropriate to carry on the business and affairs of the Partnership.

Additionally, Section 5.1 authorizes the General Partner to manage the day-to-day operations of the Applicant, which include, but are not limited to, the following rights and powers: (1) the conduct of bidding activity in Auction No. 73;  (2) the borrowing of money from banks, or other lending institutions; (3) the hiring and terminating of employees; (4) the operation of the partnership business and enter into contracts for the management and operation of such business; (5) the acquisition, use and sale of real and personal property on behalf of the Partnership; (6) the making of all payments required of the Partnership; and (7) the arranging for all federal, state and local regulatory and tax filings.  Section 6.2 of the Agreement provides that the General Partner "shall execute all

---

[1]    Applicant notes that if any subsequent changes are made to any of the agreements listed herein, the Applicant will amend the Form 601 as required by the Commission's rules and include the amended agreements.

contracts, agreements and instruments as the General Partner may reasonably deem necessary or desirable to carry on the purpose of the Partnership." Similarly, only the General Partner can make capital calls for the Partnership or call for the inclusion of new partners.

This Agreement also provides the General Partner with certain "put" rights, whereby it has the right to require the Limited Partner to buy the interest of the General Partner. Significantly, there is no corresponding "call" right on the General Partner's interest. This Agreement also provides for a mutual, customary right of first refusal in the event that either party desires to sell its interest to a third party.

2.      Investment Agreement

King Street Inc., USCC Wireless, and USCC entered into an Investment Agreement on December 21, 2007 which addresses the funding of the Applicant. The Agreement provides that the Partnership (Applicant) will be capitalized on a 20 percent equity, 80 percent debt basis (Section 1.1). Section 1.1 further indicates that the Partnership itself is responsible for obtaining financing and that neither partner to the Partnership is obligated to make loans to the Partnership. Further, with respect to the initial capital contributions, the Agreement provides that King Street Inc. will contribute $125,000 of its own funds (which King Street Inc. has already contributed). The remainder of its capital contribution would be in the form of a loan, the terms of which are discussed below, from the Limited Partner or an affiliate of the Limited Partner.

3.      Bidding Protocol

The Bidding Protocol, executed on December 21, 2007, by and among King Street Inc., USCC Wireless, and Applicant, as amended nine times to change only maximum permissible bids, provides that Ms. Allison Cryor DiNardo has sole authority to determine which 700 MHz Band Licenses, and in which order, the Applicant would enter bids in each round, provided that the bids are consistent with the overall investment parameters set forth in the Applicant's governing documents.

The bidding agreement has several purposes. First, it prioritized all markets in Auction No. 73 by bid level. Second, the agreement established an overall bidding cap that would not exceed $800 Million without approval of the parties. Third, the Agreement set forth the initial maximum price per pop for each 700 MHz Band License available in the auction. Lastly, it provided generally for the partners to confer with each other (but not with other bidders) during the course of the auction.

4.      Loan Agreement

King Street Inc., as the borrower, and USCC, the parent company of USCC Wireless, as the lender, entered into a loan agreement (the "Loan Agreement") on December 21, 2007. Pursuant to the Loan Agreement, USCC shall advance funds to King Street Inc. for the purpose of making required capital contributions to the Applicant.

The aggregate amount of the advances shall not exceed $5,000,000.  The interest rate on the advances is, consistent with industry standards for arm's length loans in transactions such as this one, 8 percent per annum, compounded annually.  Principal and interest on the advances are due on the earlier of (1) December 21, 2017; (2) the sale of the capital stock in King Street Inc.; (3) the sale of all or substantially all of the Assets of the Applicant; (4) the sale of any or all of King Street Inc.'s interest in theApplicant; or (5) the date of return by the FCC of the Auction 73 deposit.  Moreover, King Street Inc. has the option to prepay any or all of the advances made by USCC, or to obtain funding from other sources, but lender does not have the option to refuse to make the loan, subject to King Street Inc. satisfying the conditions of the Loan Agreement.

     5.    <u>Loan and Security Agreement</u>

On December 21, 2007, the Applicant and USCC entered into a Loan and Security Agreement in which USCC shall advance funds to the Applicant for the sole purpose of making the 700 MHz Band Auction deposit (initial upfront payment requirement and subsequent deposit equal to 20% of the net winning bids) required by the Commission and to also provide additional working capital. For this loan, the aggregate amount of the advances shall not exceed $77,680,000.00.  The interest rate on the advances is, consistent with industry standards for arm's length loans in transactions such as this one, 8 percent per annum, compounded annually.  Principal and interest on the advances are due on the earlier of (1) the 10th anniversary of the date of this Agreement; (2) the sale of the capital stock in King Street Inc.; (3) the sale of all or substantially all of the Assets of the Applicant; (4) the sale of any or all of King Street Inc.'s interest in the Applicant; or (5) the date of return by the FCC of the Auction 73 deposit.  Moreover, Applicant has the option to prepay any or all of the advances made by USCC, or to obtain funding from other sources, but lender does not have the option to refuse to make the loan, subject to the Applicant satisfying the conditions of the Loan Agreement.

In addition, King Street granted to USCC a continuing security interest in the Collateral described in Section 5.01 of this Agreement for all of its obligations incurred as a result of advances made pursuant to this Agreement.  The collateral includes, to the extent permitted by law, all FCC licenses and permits held by the Applicant.

     6.    <u>Pledge Agreement from King Street Wireless, Inc.</u>

The Pledge Agreement, dated December 21, 2007, is between King Street Inc., as the Pledgor, in favor of USCC.  Pursuant to the Agreement, King Street Inc., as a condition to the any advances made pursuant to the Loan Agreement, grants USCC a first priority security interest in its Partnership Interests in King Street (defined as 100% of the General Partnership Interests in King Street) and all proceeds of any and all of the collateral.  Finally, King Street Inc. is restricted from selling, transferring, pledging, or otherwise encumbering or disposing of any of its Partnership Interests in King Street or any of the collateral.

7.     Pledge Agreement from Shareholders of King Street Wireless, Inc.

The Pledge Agreement, dated December 21, 2007, is between Allison Cryor DiNardo, as the Pledgor, in favor of USCC.   Pursuant to the Agreement, Allison Cryor DiNardo, as a condition to any advances made pursuant to the Loan Agreement, grants USCC a first priority security interest in her interest in King Street Inc. (defined as 100% of all the issued and outstanding shares of Capital Stock in King Street Inc.) and all proceeds of any and all of the collateral.  Finally, Allison Cryor DiNardo is restricted from selling, transferring, pledging, or otherwise encumbering or disposing of any of her interest in King Street Inc. or any of the collateral.

## C.     INVESTOR PROTECTIONS

Pursuant to Sections 1.2112(b)(3) of the FCC's Rules, King Street hereby summarizes the investor protections included in its organizational and operational documents.

1.     King Street LP Agreement

Certain traditional investor protections have been built into the King Street LP Agreement in order to protect the legitimate interests of the non-controlling partner. For example, Section 5.2 prohibits the General Partner from taking the following action: (1) amending the governing organizational documents; (2) admitting new partners; and (3) acting in contravention of applicable rules and law.  Further, Section 5.3 permits the General Partner to take the following major corporate action only with the consent of those Partners holding at least fifty-five percent (55%) of the Partnership Interests: (1), during the first five years following the issuance of a license, exceeding certain limitations on aggregate capital expenditures and aggregate negative cash flow amounts; (2) entering into contracts or incurring indebtedness in excess of $500,000, except for contracts and debt which are consistent with annual capital and operating budgets established solely by the General Partner, and which do not result in the partnership exceeding the capital expenditure and negative cash flow limits referenced in (3) above; (4) selling substantially all of the assets of the Applicant or liquidating or dissolving the Applicant; and (5) entering into an agreement with the General Partner or any affiliate which provides for the payment of more than $500,000.

The Limited Partner also has rights of first refusal and tag-along rights with respect to the sale of another Partners' interest in or the assets of King Street (Sections 9.7 and 9.8). These rights are subject to various limitations, including the time in which the right must be exercised, and the price paid to the other Partner with respect to the interests or assets being sold.

# KING STREET WIRELESS, L.P.

### Exhibit E: Request for Confidentiality

Pursuant to Section 0.459 of the Commission's Rules, King Street Wireless, L.P. ("King Street") requests confidentiality with respect to the submission of the Agreements submitted herewith:

The following information is submitted pursuant to Section 0.459(b) of the Commission's Rules:

(1)     King Street requests that the Agreements submitted herewith be given confidential treatment.

(2)     The Agreement is being submitted to the Commission pursuant to Sections 1.2110(j) and 1.2112(b)(2) of the Commission's rules, as applicable to King Street's FCC Form 601 that is required in connection with Auction No. 73.

(3)     The Agreements contain information regarding the acquisition of wireless licenses via competitive bidding, bidding strategy, plans and budgets related to the construction and operation of wireless systems, terms and conditions on which financing is being obtained, and agreements between the parties related to the formation of the limited partnership.  Such information is both commercially and financially sensitive, and is routinely withheld from public inspection.  It therefore should be afforded confidential treatment in accordance with Section 0.457(d) of the FCC Rules.

(4)     As described in item number 3, above, the Agreements relate to the acquisition, construction and operation of wireless licenses in the context of a competitive bidding proceeding.  Both FCC auctions and the wireless sector are highly competitive environments.  As a result, the disclosure of competitively and financially sensitive information can have a direct, adverse affect on the parties to the Agreements.

(5)     The Agreements contain the terms governing King Street's acquisition of wireless licenses via competitive bidding in Auction No. 73 and its operation of a wireless business.  This is information that would not customarily be released to the public.  Due to the highly competitive environment of the wireless marketplace, release of information relating to King Street's bidding strategies in Auction No. 73 and its operations could substantially harm King Street and its investors in future negotiations with competitors, vendors, third party sources of financing, etc.

(6)     In order to prevent unauthorized disclosure of the Agreements, the parties have limited the distribution of the Agreements within their organizations to persons who have a need for access to the Agreements and who are aware of their commercially and financially sensitive nature.  The parties have not provided the Agreements to any third parties who are not under an obligation to treat the documents as confidential.

(7)     As described in response to item number 6, above, the Agreements are not available to the public or any third parties who are not under an obligation to treat the documents as confidential.

(8)     Pursuant to Section 0.457(d) of the Commission's rules the subject material is not routinely available for public inspection and should continue to be withheld from public inspection at any time now or in the future.

(9)     Not applicable.

King Street also requests that the Commission return the documents without consideration if its request for confidentiality should be denied and permit King Street to submit redacted copies of the documents.