# EXHIBIT 14

# New Designated Entity Annual Report

## General Information

Approved by OMB
3060-1092

### File Number

File Number:  **0003414466**

## Licensee Information

### Licensee FRN

Licensee FRN:  **15019003**

### Entity Type

Licensee is a(n):  **Limited Partnership**

### Licensee Name

Licensee Name:  **Barat Wireless, LP**
(if entity)
Licensee Name:
(if individual)

Attention To:  **Allison Cryor DiNardo**

### Address

P.O. Box:
Street Address:  **105 North Washington Street, Suite 301**
City:  **Alexandria**
State:  **Virginia**
ZIP Code:  **22314**

Phone:  **(703)518-9902**
Fax:  **(703)518-8993**
Email:  **allison@varsitypartners.com**

### Demographics (Optional)

Race:
Ethnicity:
Gender:

## Contact Information

### Contact Name

Name:
Company Name:  **Lukas, Nace, Gutierrez & Sachs, Chartered**
Attention To:  **Thomas Gutierrez**

### Address

P.O. Box:
Street Address:     **1650 Tysons Boulevard, Suite 1500**
City:     **McLean**
State:     **Virginia**
ZIP Code:     **22102**

Phone:     **(703)584-8678**
Fax:     **(703)584-8696**
Email:     **tgutierrez@fcclaw.com**

# Designated Entity Information

| | Call Sign | Radio Service Code | Initial Grant Date | Bidding Credits | Closed Bidding | Installment Payments |
|---|---|---|---|---|---|---|
| 1 | WQGV752 | AW | 04/20/2007 | Yes | | |
| 2 | WQGV753 | AW | 04/20/2007 | Yes | | |
| 3 | WQGV754 | AW | 04/20/2007 | Yes | | |
| 4 | WQGV755 | AW | 04/20/2007 | Yes | | |
| 5 | WQGV756 | AW | 04/20/2007 | Yes | | |
| 6 | WQGV757 | AW | 04/20/2007 | Yes | | |
| 7 | WQGV758 | AW | 04/20/2007 | Yes | | |
| 8 | WQGV759 | AW | 04/20/2007 | Yes | | |
| 9 | WQGV760 | AW | 04/20/2007 | Yes | | |
| 10 | WQGV761 | AW | 04/20/2007 | Yes | | |
| 11 | WQGV762 | AW | 04/20/2007 | Yes | | |
| 12 | WQGV763 | AW | 04/20/2007 | Yes | | |
| 13 | WQGV764 | AW | 04/20/2007 | Yes | | |
| 14 | WQGV765 | AW | 04/20/2007 | Yes | | |
| 15 | WQGV766 | AW | 04/20/2007 | Yes | | |
| 16 | WQGV767 | AW | 04/20/2007 | Yes | | |
| 17 | WQGV768 | AW | 04/20/2007 | Yes | | |

# Attachments

| | Type | Description | Date Uploaded |
|---|---|---|---|
| 1 | Other | Exhibits | 04/25/2008 |

# Certification Information

**Signature**

Name:     **Allison Cryor DiNardo**
Title:     **President of General Partner**

**Receipt Date**

Receipt Date:     **04/28/2008**

Designated Entity Annual Report Reference Copy

# Comments

| Type | Description | Date |
|------|-------------|------|
| None | | |

**EXHIBIT I**

## LISTING AND SUMMARY OF APPLICABLE AGREEMENTS

1. Limited Partnership Agreement of Barat Wireless, L.P. dated as of July 11, 2006 ("Barat LP Agreement")
2. Investment Agreement dated as of July 11, 2006
3. Loan Agreement dated as of July 11, 2006
4. Loan and Security Agreement dated as of July 11, 2006
5. Pledge Agreement from Barat Wireless, Inc. dated as of July 11, 2006
6. Pledge Agreement from Shareholders of Barat Wireless, Inc, dated as of July 11, 2006
7. Management Services Agreement between Barat Wireless, L.P. and United States Cellular Corporation, dated as of April 19, 2007 ("Management Agreement")

8.

<u>**EXHIBIT II**</u>

<u>**SUMMARY OF APPLICABLE AGREEMENTS**</u>

Barat Wireless, L.P.  ("Filer" or "Barat LP"), a designated entity licensee, acquired Advanced Wireless Service (AWS) licenses in Auction No. 66.  Each of the Agreements described below was presented to Commission staff as part of Filer's Auction 66 long-form application (FCC Form 601).   Commission staff reviewed and requested certain changes to these agreements which were made prior to grant of Filer's FCC Form 601.  In addition, Filer has not entered into any agreements or arrangements (including proposed agreements and arrangements) that relate to Filer's eligibility for designated entity benefits for any designated entity license covered by this annual report.

1.  <u>Barat LP Agreement</u>

This Agreement, establishes Barat LP as a Delaware Limited Partnership.  It provides that Barat Wireless Inc. ("Barat Inc.") is the sole general partner ("General Partner") and USCC Wireless Investment, Inc. ("USCC Wireless") is the sole limited partner ("Limited Partner").  It also provides that the purpose of Barat LP is to fund, establish, and provide wireless service with respect to any AWS licenses acquired in Auction No. 66.

Barat Inc. controls Barat LP.  Section 5.1 of the Agreement succinctly provides that

[t]he General Partner at all times shall exercise control over the Partnership in compliance with the FCC Rules.  The General Partner shall have the exclusive right and power to manage, operate and control the Partnership and to make all decisions necessary or appropriate to carry on the business and affairs of the Partnership.

Additionally, Section 5.1 authorizes the General Partner to manage the day-to-day operations of Barat LP, which include, but are not limited to, the following rights and powers: (1) the conduct of bidding activity in Auction No. 66;  (2) the borrowing of money from banks, or other lending institutions; (3) the hiring and terminating of employees; (4) the operation of the partnership business and enter into contracts for the management and operation of such business; (5) the acquisition, use and sale of real and personal property on behalf of the Partnership; (6) the making of all payments required of the Partnership; and (7) the arranging for all federal, state and local regulatory and tax filings.  Section 6.2 of the Agreement provides that the General Partner "shall execute all contracts, agreements and instruments as the General Partner may reasonably deem necessary or desirable to carry on the purpose of the Partnership."  Similarly, only the General Partner can make capital calls for the Partnership or call for the inclusion of new partners.

This Agreement also provides the General Partner with certain "put" rights, whereby it has the right to require the Limited Partner to buy the interest of the General Partner. Significantly, there is no corresponding "call" right on the General Partner's interest.  This

Agreement also provides for a mutual, customary right of first refusal as well as tag-along rights in the event that either party desires to sell its interest to a third party.

    2.      <u>Investment Agreement</u>

Barat Inc., USCC Wireless, and United States Cellular Corporation ("USCC") entered into an Investment Agreement on July 11, 2006 which addresses the funding of Barat LP.  The Agreement provides that the Partnership (Barat LP) will be capitalized on a 20 percent equity, 80 percent debt basis (Section 1.1).  Section 1.1 further indicates that the Partnership itself is responsible for obtaining financing and that neither partner to the Partnership is obligated to make loans to the Partnership.   Further, with respect to the initial capital contributions, the Agreement provides that Barat Inc. will contribute $105,000 of its own funds (which Barat Inc. has already contributed).  The remainder of its capital contribution would be in the form of a loan, the terms of which are discussed below, from the Limited Partner or an affiliate of the Limited Partner.

    3.      <u>Loan Agreement</u>

Barat Inc., as the borrower, and USCC, the parent company of USCC Wireless, as the lender, entered into a loan agreement (the "Loan Agreement") on July 11, 2006.  Pursuant to the Loan Agreement, USCC shall advance funds to Barat Inc. for the purpose of making required capital contributions to Barat LP.  The aggregate amount of the advances shall not exceed $4,500,000.  The interest rate on the advances is, consistent with industry standards for arm's length loans in transactions such as this one, 8 percent per annum, compounded annually. Principal and interest on the advances are due on the earlier of (1) July 11, 2016; (2) the sale of the capital stock in Barat Inc.; (3) the sale of all or substantially all of the Assets of Barat LP; (4) the sale of any or all of Barat Inc.'s interest in Barat LP (5) the date of return by the FCC of the Auction 66 deposit.  Moreover, Barat Inc. has the option to prepay any or all of the advances made by USCC, or to obtain funding from other sources, but lender does not have the option to refuse to make the loan, subject to Barat Inc. satisfying the conditions of the Loan Agreement.

    4.      <u>Loan and Security Agreement</u>

On July 11, 2006, Barat LP and USCC entered into a Loan and Security Agreement in which USCC shall advance funds to Barat LP for the sole purpose of making the AWS Auction deposit (initial upfront payment requirement and subsequent deposit equal to 20% of the net winning bids) required by the Commission and to also provide additional working capital. The Barat LP initially deposited $80,000,000.00 as an upfront payment and, at the down payment deadline, it had enough monies on deposit to cover the 20% down payment requirement.  For this loan, the aggregate amount of the advances shall not exceed $101,952,000.00.  The interest rate on the advances is, consistent with industry standards for arm's length loans in transactions such as this one, 8 percent per annum, compounded annually.  Principal and interest on the advances are due on the earlier of (1) the 10th anniversary of the date of this Agreement; (2) the sale of the capital stock in Barat Inc.; (3) the sale of all or substantially all of the Assets of the Barat LP; (4) the sale of any or all of Barat Inc.'s interest in the Barat LP; or (5) the date of return by the FCC of the Auction 66 deposit.  Moreover, Barat LP has the option to prepay any or all of the

advances made by USCC, or to obtain funding from other sources, but lender does not have the option to refuse to make the loan, subject to the Barat LP satisfying the conditions of the Loan Agreement.

In addition, Barat LP granted to USCC a continuing security interest in the Collateral described in Section 5.01 of this Agreement for all of its obligations incurred as a result of advances made pursuant to this Agreement. The collateral includes, to the extent permitted by law, all FCC licenses and permits held by the Barat LP.

5.    Pledge Agreement from Barat Wireless, Inc.

The Pledge Agreement, dated July 11, 2006, is between Barat Inc., as the Pledgor, in favor of USCC. Pursuant to the Agreement, Barat Inc., as a condition to the any advances made pursuant to the Loan Agreement, grants USCC a first priority security interest in its Partnership Interests in Barat LP (defined as 100% of the General Partnership Interests in Barat LP) and all proceeds of any and all of the collateral. Finally, Barat Inc. is restricted from selling, transferring, pledging, or otherwise encumbering or disposing of any of its Partnership Interests in Barat LP or any of the collateral.

6.    Pledge Agreement from Shareholders of Barat Wireless, Inc.

The Pledge Agreement, dated July 11, 2006, is between Allison Cryor DiNardo, as the Pledgor, in favor of USCC. Pursuant to the Agreement, Allison Cryor DiNardo, as a condition to any advances made pursuant to the Loan Agreement, grants USCC a first priority security interest in her interest in Barat Inc. (defined as 100% of all the issued and outstanding shares of Capital Stock in Barat Inc.) and all proceeds of any and all of the collateral. Finally, Allison Cryor DiNardo is restricted from selling, transferring, pledging, or otherwise encumbering or disposing of any of her interest in Barat Inc. or any of the collateral.

7.    Management Agreement

The Management Agreement delegates to USCC certain responsibilities as the manager of the CMRS systems licensed to, constructed, and operated by or on behalf of Barat LP utilizing licenses acquired in Auction No. 66. The Management Agreement specifies that USCC will manage any systems constructed under Barat LP's continuing oversight, review, supervision and control (Recitals), that control of the CMRS systems will remain in Barat LP, and that nothing in the Management Agreement will give USCC *de facto* or *de jure* control over Barat LP or its operations (§ 11.3). Barat LP retains authority and ultimate control over the determination and implementation of policy and business strategy, including Barat LP's business plans, budgets, technical service, construction schedules, service offerings, and other aspects of Barat LP's operation (§§ 3.2, 3.3, Article IV).

Under the Agreement, Barat LP is obligated to maintain its own bank accounts (§ 7.3). In addition, Barat LP will receive receipts associated with the operation of its systems that will be deposited to these Barat LP accounts (§ 7.3). There is to be no commingling of Barat LP's and USCC's funds. Barat LP is also responsible for the payment of all financial obligations and

operating expenses (except out-of-pocket expenses) (Article IV).  Barat LP enjoys the profits and bears the risk of loss from the operation of the Barat LP systems (Article IV).  Barat LP must approve key USCC employees responsible for the operation of the Barat LP systems (§ 5.1), and it has the right to require the removal of any USCC employee working on the Barat LP system (§ 5.1(a), (b), and (c)).  Barat LP also has the right, for cause, to require USCC to discharge any independent contractor engaged to perform services under the Management Agreement (§ 5.2). Finally, Barat LP is responsible for the filing of federal, state and local tax returns, audits thereof, payment of all other fees and assessments, FCC filings and filings with other governmental entities (Article IV).

Barat LP also retains unfettered use of, and unimpaired access to, all facilities and equipment associated with the Barat LP systems (Article IV).   Under Section 2.1, and subject to certain limitations of the Manager's authority described in Article IV, USCC will provide or arrange for the following services for the Barat LP systems:

- Administrative, accounting, billing, credit, collection, insurance, purchasing, clerical and such other general services as may be necessary to administer the Barat LP Systems;
- Operational, engineering, maintenance, repair and such other technical services as may be necessary to operate the Barat LP Systems;
- Marketing, sales, advertising and such other promotional services as may be necessary to market the products and services of the Barat LP Systems, *provided that* Barat LP shall determine the terms upon which the Barat LP Systems' services are offered and prices charged for its services.

In addition, Section 2.2 provides that, under the direction and guidance of Barat LP and pursuant to the business plan and budgets approved by Barat LP, USCC will also provide the following services for the Barat LP Systems:

- Negotiating, as agent for Barat LP, such agreements as may be necessary for the provision of services, supplies, office or other types of space, utilities, insurance, concessions and the like;
- Developing and implementing plans for the construction of the Barat LP Systems in accordance with the Technical Services Plan to be developed with Barat LP;
- Developing and implementing promotional programs, including, but not limited to, the negotiation, as agent for Barat LP, of resale and/or agency arrangements;
- Developing and implementing mechanisms and systems for billing for the products and services provided by the Barat LP Systems or entering into arrangements to procure on behalf of Barat LP such billing mechanisms and systems;
- Developing and implementing plans for the maintenance of the Barat LP Systems and for monitoring the performance of the Barat LP Systems;
- Developing and implementing sales and marketing plans for the services to be provided by the Barat LP Systems, including, but not limited to, arrangements for roaming agreements, arranging for necessary sales personnel and technical support for sales

operations, and arranging for appropriate marketing vehicles for the sales of Barat LP's services and associated equipment;

- Assisting Barat LP in the preparation of filings, applications, reports and other matters with Governmental Entities.

USCC is required to perform its services in accordance with the rules and with all other applicable legal requirements (§§ 13.4, 13.5). USCC is also required to perform its services in a diligent, professional, commercially reasonable and workmanlike manner, consistent with industry standards for the wireless telecommunications industry (§ 13.5). USCC is entitled to be reimbursed for out-of-pocket expenses incurred in its performance under the Management Agreement (§ 7.1) and to be paid a management fee (§ 7.2).

The Management Agreement has an initial term of eight years (§ 10.1). Barat LP may terminate the Management Agreement at will upon one year's written notice (§ 10.2(b)(iii)). In addition, Barat LP may terminate the Management Agreement upon, *inter alia*, USCC's breach of the agreement, after a specified cure period, or an FCC final order revoking, terminating, canceling or refusing to renew any Barat LP license due to any act of omission or commission by USCC (§ 10.2(b)(i)). Any termination of the Management Agreement will trigger the development of a transition program to assure continued operation of the Barat LP systems and to minimize any disruption to existing customers (§ 10.4).

**EXHIBIT III**

**RESPONSE TO SPECIFIC INFORMATION REQUESTS INCLUDED ON**
**INFORMATION AND INSTRUCTIONS FOR COMPLETION OF FCC FORM 611-T**

Progress In Meeting Construction Requirements:  The subject licenses are not subject to a specific construction requirement other than a requirement, at the time of application for renewal, that the renewal applicant has provided "substantial" service during its past license term.  Filer's licenses are due to expire April 30, 2022. Barat LP is in the planning stages of construction and is considering equipment capabilities.

Services Provided or Planned:   Voice and data services, including Broadband Internet Access.

Number of Subscribers:  Currently none.

# New Designated Entity Annual Report

## General Information

Approved by OMB
3060-1092

**File Number**

File Number: **0003822186**

## Licensee Information

**Licensee FRN**

Licensee FRN: **15019003**

**Entity Type**

Licensee is a(n): **Limited Partnership**

**Licensee Name**

Licensee Name: **Barat Wireless, LP**
(if entity)
Licensee Name:
(if individual)

Attention To: **Allison Cryor DiNardo**

**Address**

P.O. Box:
Street Address: **105 North Pitt Street, Suite 320**
City: **Alexandria**
State: **Virginia**
ZIP Code: **22314**

Phone: **(703)518-9902**
Fax: **(703)518-8993**
Email: **allison@varsitypartners.com**

**Demographics** (Optional)

Race:
Ethnicity:
Gender:

## Contact Information

**Contact Name**

Name:
Company Name: **Lukas, Nace, Gutierrez & Sachs, LLP**
Attention To: **Thomas Gutierrez**

**Address**

P.O. Box:
Street Address: **1650 Tysons Boulevard, Suite 1500**
City: **McLean**
State: **Virginia**
ZIP Code: **22102**

Phone: **(703)584-8678**
Fax: **(703)584-8696**
Email: **tgutierrez@fcclaw.com**

## Designated Entity Information

| | Call Sign | Radio Service Code | Initial Grant Date | Bidding Credits | Closed Bidding | Installment Payments |
|---|---|---|---|---|---|---|
| 1 | WQGV752 | AW | 04/30/2007 | Yes | | |
| 2 | WQGV753 | AW | 04/30/2007 | Yes | | |
| 3 | WQGV754 | AW | 04/30/2007 | Yes | | |
| 4 | WQGV755 | AW | 04/30/2007 | Yes | | |
| 5 | WQGV756 | AW | 04/30/2007 | Yes | | |
| 6 | WQGV757 | AW | 04/30/2007 | Yes | | |
| 7 | WQGV758 | AW | 04/30/2007 | Yes | | |
| 8 | WQGV759 | AW | 04/30/2007 | Yes | | |
| 9 | WQGV760 | AW | 04/30/2007 | Yes | | |
| 10 | WQGV761 | AW | 04/30/2007 | Yes | | |
| 11 | WQGV762 | AW | 04/30/2007 | Yes | | |
| 12 | WQGV763 | AW | 04/30/2007 | Yes | | |
| 13 | WQGV764 | AW | 04/30/2007 | Yes | | |
| 14 | WQGV765 | AW | 04/30/2007 | Yes | | |
| 15 | WQGV766 | AW | 04/30/2007 | Yes | | |
| 16 | WQGV767 | AW | 04/30/2007 | Yes | | |
| 17 | WQGV768 | AW | 04/30/2007 | Yes | | |

## Attachments

| | Type | Description | Date Uploaded |
|---|---|---|---|
| 1 | Other | Exhibits | 04/27/2009 |

## Certification Information

**Signature**

Name: **Allison Cryor DiNardo**
Title: **President of General Partner**

**Receipt Date**

Receipt Date: **04/29/2009**

Designated Entity Annual Report - Reference Copy

# Comments

| Type | Description | Date |
|------|-------------|------|
| None |             |      |

**EXHIBIT I**

## LISTING AND SUMMARY OF APPLICABLE AGREEMENTS

1. Limited Partnership Agreement of Barat Wireless, L.P. dated as of July 11, 2006 ("Barat LP Agreement")
2. Investment Agreement dated as of July 11, 2006
3. Loan Agreement dated as of July 11, 2006
4. Loan and Security Agreement dated as of July 11, 2006
5. Pledge Agreement from Barat Wireless, Inc. dated as of July 11, 2006
6. Pledge Agreement from Shareholders of Barat Wireless, Inc, dated as of July 11, 2006
7. Management Services Agreement between Barat Wireless, L.P. and United States Cellular Corporation, dated as of April 19, 2007 ("Management Agreement")

8.

EXHIBIT II

## SUMMARY OF APPLICABLE AGREEMENTS

Barat Wireless, L.P.  ("Filer" or "Barat LP"), a designated entity licensee, acquired Advanced Wireless Service (AWS) licenses in Auction No. 66.  Each of the Agreements described below was presented to Commission staff as part of Filer's Auction 66 long-form application (FCC Form 601).   Commission staff reviewed and requested certain changes to these agreements which were made prior to grant of Filer's FCC Form 601.  In addition, Filer has not entered into any agreements or arrangements (including proposed agreements and arrangements) that relate to Filer's eligibility for designated entity benefits for any designated entity license covered by this annual report.

1. Barat LP Agreement

This Agreement, establishes Barat LP as a Delaware Limited Partnership.  It provides that Barat Wireless Inc. ("Barat Inc.") is the sole general partner ("General Partner") and USCC Wireless Investment, Inc. ("USCC Wireless") is the sole limited partner ("Limited Partner").  It also provides that the purpose of Barat LP is to fund, establish, and provide wireless service with respect to any AWS licenses acquired in Auction No. 66.

Barat Inc. controls Barat LP.  Section 5.1 of the Agreement succinctly provides that

[t]he General Partner at all times shall exercise control over the Partnership in compliance with the FCC Rules.  The General Partner shall have the exclusive right and power to manage, operate and control the Partnership and to make all decisions necessary or appropriate to carry on the business and affairs of the Partnership.

Additionally, Section 5.1 authorizes the General Partner to manage the day-to-day operations of Barat LP, which include, but are not limited to, the following rights and powers: (1) the conduct of bidding activity in Auction No. 66;  (2) the borrowing of money from banks, or other lending institutions; (3) the hiring and terminating of employees; (4) the operation of the partnership business and enter into contracts for the management and operation of such business; (5) the acquisition, use and sale of real and personal property on behalf of the Partnership; (6) the making of all payments required of the Partnership; and (7) the arranging for all federal, state and local regulatory and tax filings.  Section 6.2 of the Agreement provides that the General Partner "shall execute all contracts, agreements and instruments as the General Partner may reasonably deem necessary or desirable to carry on the purpose of the Partnership."  Similarly, only the General Partner can make capital calls for the Partnership or call for the inclusion of new partners.

This Agreement also provides the General Partner with certain "put" rights, whereby it has the right to require the Limited Partner to buy the interest of the General Partner. Significantly, there is no corresponding "call" right on the General Partner's interest.  This

Agreement also provides for a mutual, customary right of first refusal as well as tag-along rights in the event that either party desires to sell its interest to a third party.

2.      Investment Agreement

Barat Inc., USCC Wireless, and United States Cellular Corporation ("USCC") entered into an Investment Agreement on July 11, 2006 which addresses the funding of Barat LP.  The Agreement provides that the Partnership (Barat LP) will be capitalized on a 20 percent equity, 80 percent debt basis (Section 1.1).  Section 1.1 further indicates that the Partnership itself is responsible for obtaining financing and that neither partner to the Partnership is obligated to make loans to the Partnership.   Further, with respect to the initial capital contributions, the Agreement provides that Barat Inc. will contribute $105,000 of its own funds (which Barat Inc. has already contributed).  The remainder of its capital contribution would be in the form of a loan, the terms of which are discussed below, from the Limited Partner or an affiliate of the Limited Partner.

3.      Loan Agreement

Barat Inc., as the borrower, and USCC, the parent company of USCC Wireless, as the lender, entered into a loan agreement (the "Loan Agreement") on July 11, 2006.  Pursuant to the Loan Agreement, USCC shall advance funds to Barat Inc. for the purpose of making required capital contributions to Barat LP.  The aggregate amount of the advances shall not exceed $4,500,000.  The interest rate on the advances is, consistent with industry standards for arm's length loans in transactions such as this one, 8 percent per annum, compounded annually. Principal and interest on the advances are due on the earlier of (1) July 11, 2016; (2) the sale of the capital stock in Barat Inc.; (3) the sale of all or substantially all of the Assets of Barat LP; (4) the sale of any or all of Barat Inc.'s interest in Barat LP (5) the date of return by the FCC of the Auction 66 deposit.  Moreover, Barat Inc. has the option to prepay any or all of the advances made by USCC, or to obtain funding from other sources, but lender does not have the option to refuse to make the loan, subject to Barat Inc. satisfying the conditions of the Loan Agreement.

4.      Loan and Security Agreement

On July 11, 2006, Barat LP and USCC entered into a Loan and Security Agreement in which USCC shall advance funds to Barat LP for the sole purpose of making the AWS Auction deposit (initial upfront payment requirement and subsequent deposit equal to 20% of the net winning bids) required by the Commission and to also provide additional working capital. The Barat LP initially deposited $80,000,000.00 as an upfront payment and, at the down payment deadline, it had enough monies on deposit to cover the 20% down payment requirement.  For this loan, the aggregate amount of the advances shall not exceed $101,952,000.00.  The interest rate on the advances is, consistent with industry standards for arm's length loans in transactions such as this one, 8 percent per annum, compounded annually.  Principal and interest on the advances are due on the earlier of (1) the 10th anniversary of the date of this Agreement; (2) the sale of the capital stock in Barat Inc.; (3) the sale of all or substantially all of the Assets of the Barat LP; (4) the sale of any or all of Barat Inc.'s interest in the Barat LP; or (5) the date of return by the FCC of the Auction 66 deposit.  Moreover, Barat LP has the option to prepay any or all of the

advances made by USCC, or to obtain funding from other sources, but lender does not have the option to refuse to make the loan, subject to the Barat LP satisfying the conditions of the Loan Agreement.

In addition, Barat LP granted to USCC a continuing security interest in the Collateral described in Section 5.01 of this Agreement for all of its obligations incurred as a result of advances made pursuant to this Agreement.  The collateral includes, to the extent permitted by law, all FCC licenses and permits held by the Barat LP.

5.      Pledge Agreement from Barat Wireless, Inc.

The Pledge Agreement, dated July 11, 2006, is between Barat Inc., as the Pledgor, in favor of USCC.  Pursuant to the Agreement, Barat Inc., as a condition to the any advances made pursuant to the Loan Agreement, grants USCC a first priority security interest in its Partnership Interests in Barat LP (defined as 100% of the General Partnership Interests in Barat LP) and all proceeds of any and all of the collateral.  Finally, Barat Inc. is restricted from selling, transferring, pledging, or otherwise encumbering or disposing of any of its Partnership Interests in Barat LP or any of the collateral.

6.      Pledge Agreement from Shareholders of Barat Wireless, Inc.

The Pledge Agreement, dated July 11, 2006, is between Allison Cryor DiNardo, as the Pledgor, in favor of USCC.  Pursuant to the Agreement, Allison Cryor DiNardo, as a condition to any advances made pursuant to the Loan Agreement, grants USCC a first priority security interest in her interest in Barat Inc. (defined as 100% of all the issued and outstanding shares of Capital Stock in Barat Inc.) and all proceeds of any and all of the collateral.  Finally, Allison Cryor DiNardo is restricted from selling, transferring, pledging, or otherwise encumbering or disposing of any of her interest in Barat Inc. or any of the collateral.

7.      Management Agreement

The Management Agreement delegates to USCC certain responsibilities as the manager of the CMRS systems licensed to, constructed, and operated by or on behalf of Barat LP utilizing licenses acquired in Auction No. 66.  The Management Agreement specifies that USCC will manage any systems constructed under Barat LP's continuing oversight, review, supervision and control (Recitals), that control of the CMRS systems will remain in Barat LP, and that nothing in the Management Agreement will give USCC *de facto* or *de jure* control over Barat LP or its operations (§ 11.3).  Barat LP retains authority and ultimate control over the determination and implementation of policy and business strategy, including Barat LP's business plans, budgets, technical service, construction schedules, service offerings, and other aspects of Barat LP's operation (§§ 3.2, 3.3, Article IV).

Under the Agreement, Barat LP is obligated to maintain its own bank accounts (§ 7.3). In addition, Barat LP will receive receipts associated with the operation of its systems that will be deposited to these Barat LP accounts (§ 7.3).  There is to be no commingling of Barat LP's and USCC's funds.  Barat LP is also responsible for the payment of all financial obligations and

operating expenses (except out-of-pocket expenses) (Article IV). Barat LP enjoys the profits and bears the risk of loss from the operation of the Barat LP systems (Article IV). Barat LP must approve key USCC employees responsible for the operation of the Barat LP systems (§ 5.1), and it has the right to require the removal of any USCC employee working on the Barat LP system (§ 5.1(a), (b), and (c)). Barat LP also has the right, for cause, to require USCC to discharge any independent contractor engaged to perform services under the Management Agreement (§ 5.2). Finally, Barat LP is responsible for the filing of federal, state and local tax returns, audits thereof, payment of all other fees and assessments, FCC filings and filings with other governmental entities (Article IV).

Barat LP also retains unfettered use of, and unimpaired access to, all facilities and equipment associated with the Barat LP systems (Article IV). Under Section 2.1, and subject to certain limitations of the Manager's authority described in Article IV, USCC will provide or arrange for the following services for the Barat LP systems:

- Administrative, accounting, billing, credit, collection, insurance, purchasing, clerical and such other general services as may be necessary to administer the Barat LP Systems;
- Operational, engineering, maintenance, repair and such other technical services as may be necessary to operate the Barat LP Systems;
- Marketing, sales, advertising and such other promotional services as may be necessary to market the products and services of the Barat LP Systems, *provided that* Barat LP shall determine the terms upon which the Barat LP Systems' services are offered and prices charged for its services.

In addition, Section 2.2 provides that, under the direction and guidance of Barat LP and pursuant to the business plan and budgets approved by Barat LP, USCC will also provide the following services for the Barat LP Systems:

- Negotiating, as agent for Barat LP, such agreements as may be necessary for the provision of services, supplies, office or other types of space, utilities, insurance, concessions and the like;
- Developing and implementing plans for the construction of the Barat LP Systems in accordance with the Technical Services Plan to be developed with Barat LP;
- Developing and implementing promotional programs, including, but not limited to, the negotiation, as agent for Barat LP, of resale and/or agency arrangements;
- Developing and implementing mechanisms and systems for billing for the products and services provided by the Barat LP Systems or entering into arrangements to procure on behalf of Barat LP such billing mechanisms and systems;
- Developing and implementing plans for the maintenance of the Barat LP Systems and for monitoring the performance of the Barat LP Systems;
- Developing and implementing sales and marketing plans for the services to be provided by the Barat LP Systems, including, but not limited to, arrangements for roaming agreements, arranging for necessary sales personnel and technical support for sales

operations, and arranging for appropriate marketing vehicles for the sales of Barat LP's services and associated equipment;

- Assisting Barat LP in the preparation of filings, applications, reports and other matters with Governmental Entities.

USCC is required to perform its services in accordance with the rules and with all other applicable legal requirements (§§ 13.4, 13.5). USCC is also required to perform its services in a diligent, professional, commercially reasonable and workmanlike manner, consistent with industry standards for the wireless telecommunications industry (§ 13.5). USCC is entitled to be reimbursed for out-of-pocket expenses incurred in its performance under the Management Agreement (§ 7.1) and to be paid a management fee (§ 7.2).

The Management Agreement has an initial term of eight years (§ 10.1). Barat LP may terminate the Management Agreement at will upon one year's written notice (§ 10.2(b)(iii)). In addition, Barat LP may terminate the Management Agreement upon, *inter alia*, USCC's breach of the agreement, after a specified cure period, or an FCC final order revoking, terminating, canceling or refusing to renew any Barat LP license due to any act of omission or commission by USCC (§ 10.2(b)(i)). Any termination of the Management Agreement will trigger the development of a transition program to assure continued operation of the Barat LP systems and to minimize any disruption to existing customers (§ 10.4).

**EXHIBIT III**

**RESPONSE TO SPECIFIC INFORMATION REQUESTS INCLUDED ON INFORMATION AND INSTRUCTIONS FOR COMPLETION OF FCC FORM 611-T**

<u>Progress In Meeting Construction Requirements:</u>  The subject licenses are not subject to a specific construction requirement other than a requirement, at the time of application for renewal, that the renewal applicant has provided "substantial" service during its past license term.  Filer's licenses are due to expire April 30, 2022. Barat LP is in the planning stages of construction and is considering equipment capabilities.

<u>Services Provided or Planned:</u>  Voice and data services, including Broadband Internet Access.

<u>Number of Subscribers:</u>  Currently none.

# New Designated Entity Annual Report

## General Information

Approved by OMB
3060-1092

### File Number

File Number: **0004231487**

## Licensee Information

### Licensee FRN

Licensee FRN: **15019003**

### Entity Type

Licensee is a(n): **Limited Partnership**

### Licensee Name

Licensee Name: **Barat Wireless, Lp**
(if entity)
Licensee Name:
(if individual)

Attention To: **Allison Cryor DiNardo**

### Address

P.O. Box:
Street Address: **105 North Pitt Street, Suite 320**
City: **Alexandria**
State: **Virginia**
ZIP Code: **22314**

Phone: **(703)518-9902**
Fax: **(703)518-8993**
Email: **allison@varsitypartners.com**

### Demographics (Optional)

Race:
Ethnicity:
Gender:

## Contact Information

### Contact Name

Name:
Company Name: **Lukas, Nace, Gutierrez & Sachs, LLP**
Attention To: **Thomas Gutierrez**

### Address

P.O. Box:
Street Address:    **8300 Greensboro Drive, Suite 1200**
City:              **McLean**
State:             **Virginia**
ZIP Code:          **22102**

Phone:             **(703)584-8678**
Fax:               **(703)584-8696**
Email:             **tgutierrez@fcclaw.com**

## Designated Entity Information

|    | Call Sign | Radio Service Code | Initial Grant Date | Bidding Credits | Closed Bidding | Installment Payments |
|----|-----------|--------------------|--------------------|-----------------|----------------|----------------------|
| 1  | WQGV752   | AW                 | 04/30/2007         | Yes             |                |                      |
| 2  | WQGV753   | AW                 | 04/30/2007         | Yes             |                |                      |
| 3  | WQGV754   | AW                 | 04/30/2007         | Yes             |                |                      |
| 4  | WQGV755   | AW                 | 04/30/2007         | Yes             |                |                      |
| 5  | WQGV756   | AW                 | 04/30/2007         | Yes             |                |                      |
| 6  | WQGV757   | AW                 | 04/30/2007         | Yes             |                |                      |
| 7  | WQGV758   | AW                 | 04/30/2007         | Yes             |                |                      |
| 8  | WQGV759   | AW                 | 04/30/2007         | Yes             |                |                      |
| 9  | WQGV760   | AW                 | 04/30/2007         | Yes             |                |                      |
| 10 | WQGV761   | AW                 | 04/30/2007         | Yes             |                |                      |
| 11 | WQGV762   | AW                 | 04/30/2007         | Yes             |                |                      |
| 12 | WQGV763   | AW                 | 04/30/2007         | Yes             |                |                      |
| 13 | WQGV764   | AW                 | 04/30/2007         | Yes             |                |                      |
| 14 | WQGV765   | AW                 | 04/30/2007         | Yes             |                |                      |
| 15 | WQGV766   | AW                 | 04/30/2007         | Yes             |                |                      |
| 16 | WQGV767   | AW                 | 04/30/2007         | Yes             |                |                      |
| 17 | WQGV768   | AW                 | 04/30/2007         | Yes             |                |                      |

## Attachments

|   | Type  | Description | Date Uploaded |
|---|-------|-------------|---------------|
| 1 | Other | Exhibits    | 04/26/2010    |

## Certification Information

**Signature**

Name:              **Allison Cryor DiNardo**
Title:             **President of General Partner**

**Receipt Date**

Receipt Date:      **04/30/2010**

Case 5:15-cv-00370-G    Document 99-16    Filed 04/17/20    Page 24 of 41

# Comments

| Type | Description | Date |
|------|-------------|------|
| None | | |

**EXHIBIT I**

## LISTING AND SUMMARY OF APPLICABLE AGREEMENTS

1. Limited Partnership Agreement of Barat Wireless, L.P. dated as of July 11, 2006 ("Barat LP Agreement")
2. Investment Agreement dated as of July 11, 2006
3. Loan Agreement dated as of July 11, 2006
4. Loan and Security Agreement dated as of July 11, 2006
5. Pledge Agreement from Barat Wireless, Inc. dated as of July 11, 2006
6. Pledge Agreement from Shareholders of Barat Wireless, Inc, dated as of July 11, 2006
7. Management Services Agreement between Barat Wireless, L.P. and United States Cellular Corporation, dated as of April 19, 2007 ("Management Agreement")

8.

**EXHIBIT II**

## SUMMARY OF APPLICABLE AGREEMENTS

Barat Wireless, L.P.  ("Filer" or "Barat LP"), a designated entity licensee, acquired Advanced Wireless Service (AWS) licenses in Auction No. 66.  Each of the Agreements described below was presented to Commission staff as part of Filer's Auction 66 long-form application (FCC Form 601).   Commission staff reviewed and requested certain changes to these agreements which were made prior to grant of Filer's FCC Form 601.  In addition, Filer has not entered into any agreements or arrangements (including proposed agreements and arrangements) that relate to Filer's eligibility for designated entity benefits for any designated entity license covered by this annual report.

1.  Barat LP Agreement

This Agreement, establishes Barat LP as a Delaware Limited Partnership.  It provides that Barat Wireless Inc. ("Barat Inc.") is the sole general partner ("General Partner") and USCC Wireless Investment, Inc. ("USCC Wireless") is the sole limited partner ("Limited Partner").  It also provides that the purpose of Barat LP is to fund, establish, and provide wireless service with respect to any AWS licenses acquired in Auction No. 66.

Barat Inc. controls Barat LP.  Section 5.1 of the Agreement succinctly provides that

[t]he General Partner at all times shall exercise control over the Partnership in compliance with the FCC Rules.  The General Partner shall have the exclusive right and power to manage, operate and control the Partnership and to make all decisions necessary or appropriate to carry on the business and affairs of the Partnership.

Additionally, Section 5.1 authorizes the General Partner to manage the day-to-day operations of Barat LP, which include, but are not limited to, the following rights and powers: (1) the conduct of bidding activity in Auction No. 66;  (2) the borrowing of money from banks, or other lending institutions; (3) the hiring and terminating of employees; (4) the operation of the partnership business and enter into contracts for the management and operation of such business; (5) the acquisition, use and sale of real and personal property on behalf of the Partnership; (6) the making of all payments required of the Partnership; and (7) the arranging for all federal, state and local regulatory and tax filings.  Section 6.2 of the Agreement provides that the General Partner "shall execute all contracts, agreements and instruments as the General Partner may reasonably deem necessary or desirable to carry on the purpose of the Partnership."  Similarly, only the General Partner can make capital calls for the Partnership or call for the inclusion of new partners.

This Agreement also provides the General Partner with certain "put" rights, whereby it has the right to require the Limited Partner to buy the interest of the General Partner. Significantly, there is no corresponding "call" right on the General Partner's interest.  This

Agreement also provides for a mutual, customary right of first refusal as well as tag-along rights in the event that either party desires to sell its interest to a third party.

2. <u>Investment Agreement</u>

Barat Inc., USCC Wireless, and United States Cellular Corporation ("USCC") entered into an Investment Agreement on July 11, 2006 which addresses the funding of Barat LP. The Agreement provides that the Partnership (Barat LP) will be capitalized on a 20 percent equity, 80 percent debt basis (Section 1.1). Section 1.1 further indicates that the Partnership itself is responsible for obtaining financing and that neither partner to the Partnership is obligated to make loans to the Partnership. Further, with respect to the initial capital contributions, the Agreement provides that Barat Inc. will contribute $105,000 of its own funds (which Barat Inc. has already contributed). The remainder of its capital contribution would be in the form of a loan, the terms of which are discussed below, from the Limited Partner or an affiliate of the Limited Partner.

3. <u>Loan Agreement</u>

Barat Inc., as the borrower, and USCC, the parent company of USCC Wireless, as the lender, entered into a loan agreement (the "Loan Agreement") on July 11, 2006. Pursuant to the Loan Agreement, USCC shall advance funds to Barat Inc. for the purpose of making required capital contributions to Barat LP. The aggregate amount of the advances shall not exceed $4,500,000. The interest rate on the advances is, consistent with industry standards for arm's length loans in transactions such as this one, 8 percent per annum, compounded annually. Principal and interest on the advances are due on the earlier of (1) July 11, 2016; (2) the sale of the capital stock in Barat Inc.; (3) the sale of all or substantially all of the Assets of Barat LP; (4) the sale of any or all of Barat Inc.'s interest in Barat LP (5) the date of return by the FCC of the Auction 66 deposit. Moreover, Barat Inc. has the option to prepay any or all of the advances made by USCC, or to obtain funding from other sources, but lender does not have the option to refuse to make the loan, subject to Barat Inc. satisfying the conditions of the Loan Agreement.

4. <u>Loan and Security Agreement</u>

On July 11, 2006, Barat LP and USCC entered into a Loan and Security Agreement in which USCC shall advance funds to Barat LP for the sole purpose of making the AWS Auction deposit (initial upfront payment requirement and subsequent deposit equal to 20% of the net winning bids) required by the Commission and to also provide additional working capital. The Barat LP initially deposited $80,000,000.00 as an upfront payment and, at the down payment deadline, it had enough monies on deposit to cover the 20% down payment requirement. For this loan, the aggregate amount of the advances shall not exceed $101,952,000.00. The interest rate on the advances is, consistent with industry standards for arm's length loans in transactions such as this one, 8 percent per annum, compounded annually. Principal and interest on the advances are due on the earlier of (1) the 10th anniversary of the date of this Agreement; (2) the sale of the capital stock in Barat Inc.; (3) the sale of all or substantially all of the Assets of the Barat LP; (4) the sale of any or all of Barat Inc.'s interest in the Barat LP; or (5) the date of return by the FCC of the Auction 66 deposit. Moreover, Barat LP has the option to prepay any or all of the

advances made by USCC, or to obtain funding from other sources, but lender does not have the option to refuse to make the loan, subject to the Barat LP satisfying the conditions of the Loan Agreement.

In addition, Barat LP granted to USCC a continuing security interest in the Collateral described in Section 5.01 of this Agreement for all of its obligations incurred as a result of advances made pursuant to this Agreement. The collateral includes, to the extent permitted by law, all FCC licenses and permits held by the Barat LP.

5.     Pledge Agreement from Barat Wireless, Inc.

The Pledge Agreement, dated July 11, 2006, is between Barat Inc., as the Pledgor, in favor of USCC. Pursuant to the Agreement, Barat Inc., as a condition to the any advances made pursuant to the Loan Agreement, grants USCC a first priority security interest in its Partnership Interests in Barat LP (defined as 100% of the General Partnership Interests in Barat LP) and all proceeds of any and all of the collateral. Finally, Barat Inc. is restricted from selling, transferring, pledging, or otherwise encumbering or disposing of any of its Partnership Interests in Barat LP or any of the collateral.

6.     Pledge Agreement from Shareholders of Barat Wireless, Inc.

The Pledge Agreement, dated July 11, 2006, is between Allison Cryor DiNardo, as the Pledgor, in favor of USCC. Pursuant to the Agreement, Allison Cryor DiNardo, as a condition to any advances made pursuant to the Loan Agreement, grants USCC a first priority security interest in her interest in Barat Inc. (defined as 100% of all the issued and outstanding shares of Capital Stock in Barat Inc.) and all proceeds of any and all of the collateral. Finally, Allison Cryor DiNardo is restricted from selling, transferring, pledging, or otherwise encumbering or disposing of any of her interest in Barat Inc. or any of the collateral.

7.     Management Agreement

The Management Agreement delegates to USCC certain responsibilities as the manager of the CMRS systems licensed to, constructed, and operated by or on behalf of Barat LP utilizing licenses acquired in Auction No. 66. The Management Agreement specifies that USCC will manage any systems constructed under Barat LP's continuing oversight, review, supervision and control (Recitals), that control of the CMRS systems will remain in Barat LP, and that nothing in the Management Agreement will give USCC *de facto* or *de jure* control over Barat LP or its operations (§ 11.3). Barat LP retains authority and ultimate control over the determination and implementation of policy and business strategy, including Barat LP's business plans, budgets, technical service, construction schedules, service offerings, and other aspects of Barat LP's operation (§§ 3.2, 3.3, Article IV).

Under the Agreement, Barat LP is obligated to maintain its own bank accounts (§ 7.3). In addition, Barat LP will receive receipts associated with the operation of its systems that will be deposited to these Barat LP accounts (§ 7.3). There is to be no commingling of Barat LP's and USCC's funds. Barat LP is also responsible for the payment of all financial obligations and

operating expenses (except out-of-pocket expenses) (Article IV).  Barat LP enjoys the profits and bears the risk of loss from the operation of the Barat LP systems (Article IV).  Barat LP must approve key USCC employees responsible for the operation of the Barat LP systems (§ 5.1), and it has the right to require the removal of any USCC employee working on the Barat LP system (§ 5.1(a), (b), and (c)).  Barat LP also has the right, for cause, to require USCC to discharge any independent contractor engaged to perform services under the Management Agreement (§ 5.2).  Finally, Barat LP is responsible for the filing of federal, state and local tax returns, audits thereof, payment of all other fees and assessments, FCC filings and filings with other governmental entities (Article IV).

Barat LP also retains unfettered use of, and unimpaired access to, all facilities and equipment associated with the Barat LP systems (Article IV).   Under Section 2.1, and subject to certain limitations of the Manager's authority described in Article IV, USCC will provide or arrange for the following services for the Barat LP systems:

- Administrative, accounting, billing, credit, collection, insurance, purchasing, clerical and such other general services as may be necessary to administer the Barat LP Systems;
- Operational, engineering, maintenance, repair and such other technical services as may be necessary to operate the Barat LP Systems;
- Marketing, sales, advertising and such other promotional services as may be necessary to market the products and services of the Barat LP Systems, *provided that* Barat LP shall determine the terms upon which the Barat LP Systems' services are offered and prices charged for its services.

In addition, Section 2.2 provides that, under the direction and guidance of Barat LP and pursuant to the business plan and budgets approved by Barat LP, USCC will also provide the following services for the Barat LP Systems:

- Negotiating, as agent for Barat LP, such agreements as may be necessary for the provision of services, supplies, office or other types of space, utilities, insurance, concessions and the like;
- Developing and implementing plans for the construction of the Barat LP Systems in accordance with the Technical Services Plan to be developed with Barat LP;
- Developing and implementing promotional programs, including, but not limited to, the negotiation, as agent for Barat LP, of resale and/or agency arrangements;
- Developing and implementing mechanisms and systems for billing for the products and services provided by the Barat LP Systems or entering into arrangements to procure on behalf of Barat LP such billing mechanisms and systems;
- Developing and implementing plans for the maintenance of the Barat LP Systems and for monitoring the performance of the Barat LP Systems;
- Developing and implementing sales and marketing plans for the services to be provided by the Barat LP Systems, including, but not limited to, arrangements for roaming agreements, arranging for necessary sales personnel and technical support for sales

operations, and arranging for appropriate marketing vehicles for the sales of Barat LP's services and associated equipment;

- Assisting Barat LP in the preparation of filings, applications, reports and other matters with Governmental Entities.

USCC is required to perform its services in accordance with the rules and with all other applicable legal requirements (§§ 13.4, 13.5).  USCC is also required to perform its services in a diligent, professional, commercially reasonable and workmanlike manner, consistent with industry standards for the wireless telecommunications industry (§ 13.5).  USCC is entitled to be reimbursed for out-of-pocket expenses incurred in its performance under the Management Agreement (§ 7.1) and to be paid a management fee (§ 7.2).

The Management Agreement has an initial term of eight years (§ 10.1).  Barat LP may terminate the Management Agreement at will upon one year's written notice (§ 10.2(b)(iii)).  In addition, Barat LP may terminate the Management Agreement upon, *inter alia*, USCC's breach of the agreement, after a specified cure period, or an FCC final order revoking, terminating, canceling or refusing to renew any Barat LP license due to any act of omission or commission by USCC (§ 10.2(b)(i)).  Any termination of the Management Agreement will trigger the development of a transition program to assure continued operation of the Barat LP systems and to minimize any disruption to existing customers (§ 10.4).

**EXHIBIT III**

**RESPONSE TO SPECIFIC INFORMATION REQUESTS INCLUDED ON INFORMATION AND INSTRUCTIONS FOR COMPLETION OF FCC FORM 611-T**

Progress In Meeting Construction Requirements:  The subject licenses are not subject to a specific construction requirement other than a requirement, at the time of application for renewal, that the renewal applicant has provided "substantial" service during its past license term.  Filer's licenses are due to expire April 30, 2022. Barat LP is in the planning stages of construction and is considering equipment capabilities.

Services Provided or Planned:  Voice and data services, including Broadband Internet Access.

Number of Subscribers:  Currently none.

# New Designated Entity Annual Report

## General Information

Approved by OMB
3060-1092

**File Number**

File Number: **0004707778**

## Licensee Information

**Licensee FRN**

Licensee FRN: **15019003**

**Entity Type**

Licensee is a(n): **Limited Partnership**

**Licensee Name**

Licensee Name: **Barat Wireless, LP**
(if entity)
Licensee Name:
(if individual)

Attention To: **Allison Cryor DiNardo**

**Address**

P.O. Box:
Street Address: **526 King Street, Suite 209**
City: **Alexandria**
State: **Virginia**
ZIP Code: **22314**

Phone: **(703)518-9902**
Fax: **(703)518-8993**
Email: **allison@varsitypartners.com**

**Demographics** (Optional)

Race:
Ethnicity:
Gender:

## Contact Information

**Contact Name**

Name:
Company Name: **Lukas, Nace, Gutierrez & Sachs, LLP**
Attention To: **Thomas Gutierrez**

**Address**

P.O. Box:
Street Address:  **8300 Greensboro Drive, Suite 1200**
City:  **McLean**
State:  **Virginia**
ZIP Code:  **22102**

Phone:  **(703)584-8678**
Fax:  **(703)584-8696**
Email:  **tgutierrez@fcclaw.com**

# Designated Entity Information

| | Call Sign | Radio Service Code | Initial Grant Date | Bidding Credits | Closed Bidding | Installment Payments |
|---|---|---|---|---|---|---|
| 1 | WQGV752 | AW | 04/30/2007 | Yes | | |
| 2 | WQGV753 | AW | 04/30/2007 | Yes | | |
| 3 | WQGV754 | AW | 04/30/2007 | Yes | | |
| 4 | WQGV755 | AW | 04/30/2007 | Yes | | |
| 5 | WQGV756 | AW | 04/30/2007 | Yes | | |
| 6 | WQGV757 | AW | 04/30/2007 | Yes | | |
| 7 | WQGV758 | AW | 04/30/2007 | Yes | | |
| 8 | WQGV759 | AW | 04/30/2007 | Yes | | |
| 9 | WQGV760 | AW | 04/30/2007 | Yes | | |
| 10 | WQGV761 | AW | 04/30/2007 | Yes | | |
| 11 | WQGV762 | AW | 04/30/2007 | Yes | | |
| 12 | WQGV763 | AW | 04/30/2007 | Yes | | |
| 13 | WQGV764 | AW | 04/30/2007 | Yes | | |
| 14 | WQGV765 | AW | 04/30/2007 | Yes | | |
| 15 | WQGV766 | AW | 04/30/2007 | Yes | | |
| 16 | WQGV767 | AW | 04/30/2007 | Yes | | |
| 17 | WQGV768 | AW | 04/30/2007 | Yes | | |

# Attachments

| | Type | Description | Date Uploaded |
|---|---|---|---|
| 1 | Other | Exhibits | 04/25/2011 |

# Certification Information

**Signature**

Name:  **Allison Cryor DiNardo**
Title:  **President of General Partner**

**Receipt Date**

Receipt Date:  **04/28/2011**

Designated Entity Annual Report - Reference Copy

# Comments

| | Type | Description | Date |
|---|---|---|---|
| 1 | External | Application accepted for pn. | 08/16/2013 |

**EXHIBIT I**

## LISTING AND SUMMARY OF APPLICABLE AGREEMENTS

1. Limited Partnership Agreement of Barat Wireless, L.P. dated as of July 11, 2006 ("Barat LP Agreement")
2. Investment Agreement dated as of July 11, 2006
3. Loan Agreement dated as of July 11, 2006
4. Loan and Security Agreement dated as of July 11, 2006
5. Pledge Agreement from Barat Wireless, Inc. dated as of July 11, 2006
6. Pledge Agreement from Shareholders of Barat Wireless, Inc, dated as of July 11, 2006
7. Management Services Agreement between Barat Wireless, L.P. and United States Cellular Corporation, dated as of April 19, 2007 ("Management Agreement")

8.

**EXHIBIT II**

## SUMMARY OF APPLICABLE AGREEMENTS

Barat Wireless, L.P.  ("Filer" or "Barat LP"), a designated entity licensee, acquired Advanced Wireless Service (AWS) licenses in Auction No. 66.  Each of the Agreements described below was presented to Commission staff as part of Filer's Auction 66 long-form application (FCC Form 601).  Commission staff reviewed and requested certain changes to these agreements which were made prior to grant of Filer's FCC Form 601.  In addition, Filer has not entered into any agreements or arrangements (including proposed agreements and arrangements) that relate to Filer's eligibility for designated entity benefits for any designated entity license covered by this annual report.

1. Barat LP Agreement

This Agreement, establishes Barat LP as a Delaware Limited Partnership.  It provides that Barat Wireless Inc. ("Barat Inc.") is the sole general partner ("General Partner") and USCC Wireless Investment, Inc. ("USCC Wireless") is the sole limited partner ("Limited Partner").  It also provides that the purpose of Barat LP is to fund, establish, and provide wireless service with respect to any AWS licenses acquired in Auction No. 66.

Barat Inc. controls Barat LP.  Section 5.1 of the Agreement succinctly provides that

[t]he General Partner at all times shall exercise control over the Partnership in compliance with the FCC Rules.  The General Partner shall have the exclusive right and power to manage, operate and control the Partnership and to make all decisions necessary or appropriate to carry on the business and affairs of the Partnership.

Additionally, Section 5.1 authorizes the General Partner to manage the day-to-day operations of Barat LP, which include, but are not limited to, the following rights and powers: (1) the conduct of bidding activity in Auction No. 66;  (2) the borrowing of money from banks, or other lending institutions; (3) the hiring and terminating of employees; (4) the operation of the partnership business and enter into contracts for the management and operation of such business; (5) the acquisition, use and sale of real and personal property on behalf of the Partnership; (6) the making of all payments required of the Partnership; and (7) the arranging for all federal, state and local regulatory and tax filings.  Section 6.2 of the Agreement provides that the General Partner "shall execute all contracts, agreements and instruments as the General Partner may reasonably deem necessary or desirable to carry on the purpose of the Partnership."  Similarly, only the General Partner can make capital calls for the Partnership or call for the inclusion of new partners.

This Agreement also provides the General Partner with certain "put" rights, whereby it has the right to require the Limited Partner to buy the interest of the General Partner. Significantly, there is no corresponding "call" right on the General Partner's interest.  This

Agreement also provides for a mutual, customary right of first refusal as well as tag-along rights in the event that either party desires to sell its interest to a third party.

2.      Investment Agreement

Barat Inc., USCC Wireless, and United States Cellular Corporation ("USCC") entered into an Investment Agreement on July 11, 2006 which addresses the funding of Barat LP.  The Agreement provides that the Partnership (Barat LP) will be capitalized on a 20 percent equity, 80 percent debt basis (Section 1.1).  Section 1.1 further indicates that the Partnership itself is responsible for obtaining financing and that neither partner to the Partnership is obligated to make loans to the Partnership.   Further, with respect to the initial capital contributions, the Agreement provides that Barat Inc. will contribute $105,000 of its own funds (which Barat Inc. has already contributed).  The remainder of its capital contribution would be in the form of a loan, the terms of which are discussed below, from the Limited Partner or an affiliate of the Limited Partner.

3.      Loan Agreement

Barat Inc., as the borrower, and USCC, the parent company of USCC Wireless, as the lender, entered into a loan agreement (the "Loan Agreement") on July 11, 2006.  Pursuant to the Loan Agreement, USCC shall advance funds to Barat Inc. for the purpose of making required capital contributions to Barat LP.  The aggregate amount of the advances shall not exceed $4,500,000.  The interest rate on the advances is, consistent with industry standards for arm's length loans in transactions such as this one, 8 percent per annum, compounded annually. Principal and interest on the advances are due on the earlier of (1) July 11, 2016; (2) the sale of the capital stock in Barat Inc.; (3) the sale of all or substantially all of the Assets of Barat LP; (4) the sale of any or all of Barat Inc.'s interest in Barat LP (5) the date of return by the FCC of the Auction 66 deposit.  Moreover, Barat Inc. has the option to prepay any or all of the advances made by USCC, or to obtain funding from other sources, but lender does not have the option to refuse to make the loan, subject to Barat Inc. satisfying the conditions of the Loan Agreement.

4.      Loan and Security Agreement

On July 11, 2006, Barat LP and USCC entered into a Loan and Security Agreement in which USCC shall advance funds to Barat LP for the sole purpose of making the AWS Auction deposit (initial upfront payment requirement and subsequent deposit equal to 20% of the net winning bids) required by the Commission and to also provide additional working capital. The Barat LP initially deposited $80,000,000.00 as an upfront payment and, at the down payment deadline, it had enough monies on deposit to cover the 20% down payment requirement.  For this loan, the aggregate amount of the advances shall not exceed $101,952,000.00.  The interest rate on the advances is, consistent with industry standards for arm's length loans in transactions such as this one, 8 percent per annum, compounded annually.  Principal and interest on the advances are due on the earlier of (1) the 10th anniversary of the date of this Agreement; (2) the sale of the capital stock in Barat Inc.; (3) the sale of all or substantially all of the Assets of the Barat LP; (4) the sale of any or all of Barat Inc.'s interest in the Barat LP; or (5) the date of return by the FCC of the Auction 66 deposit.  Moreover, Barat LP has the option to prepay any or all of the

advances made by USCC, or to obtain funding from other sources, but lender does not have the option to refuse to make the loan, subject to the Barat LP satisfying the conditions of the Loan Agreement.

In addition, Barat LP granted to USCC a continuing security interest in the Collateral described in Section 5.01 of this Agreement for all of its obligations incurred as a result of advances made pursuant to this Agreement.  The collateral includes, to the extent permitted by law, all FCC licenses and permits held by the Barat LP.

5.      Pledge Agreement from Barat Wireless, Inc.

The Pledge Agreement, dated July 11, 2006, is between Barat Inc., as the Pledgor, in favor of USCC.  Pursuant to the Agreement, Barat Inc., as a condition to the any advances made pursuant to the Loan Agreement, grants USCC a first priority security interest in its Partnership Interests in Barat LP (defined as 100% of the General Partnership Interests in Barat LP) and all proceeds of any and all of the collateral.  Finally, Barat Inc. is restricted from selling, transferring, pledging, or otherwise encumbering or disposing of any of its Partnership Interests in Barat LP or any of the collateral.

6.      Pledge Agreement from Shareholders of Barat Wireless, Inc.

The Pledge Agreement, dated July 11, 2006, is between Allison Cryor DiNardo, as the Pledgor, in favor of USCC.  Pursuant to the Agreement, Allison Cryor DiNardo, as a condition to any advances made pursuant to the Loan Agreement, grants USCC a first priority security interest in her interest in Barat Inc. (defined as 100% of all the issued and outstanding shares of Capital Stock in Barat Inc.) and all proceeds of any and all of the collateral.  Finally, Allison Cryor DiNardo is restricted from selling, transferring, pledging, or otherwise encumbering or disposing of any of her interest in Barat Inc. or any of the collateral.

7.      Management Agreement

The Management Agreement delegates to USCC certain responsibilities as the manager of the CMRS systems licensed to, constructed, and operated by or on behalf of Barat LP utilizing licenses acquired in Auction No. 66.  The Management Agreement specifies that USCC will manage any systems constructed under Barat LP's continuing oversight, review, supervision and control (Recitals), that control of the CMRS systems will remain in Barat LP, and that nothing in the Management Agreement will give USCC *de facto* or *de jure* control over Barat LP or its operations (§ 11.3).  Barat LP retains authority and ultimate control over the determination and implementation of policy and business strategy, including Barat LP's business plans, budgets, technical service, construction schedules, service offerings, and other aspects of Barat LP's operation (§§ 3.2, 3.3, Article IV).

Under the Agreement, Barat LP is obligated to maintain its own bank accounts (§ 7.3). In addition, Barat LP will receive receipts associated with the operation of its systems that will be deposited to these Barat LP accounts (§ 7.3).  There is to be no commingling of Barat LP's and USCC's funds.  Barat LP is also responsible for the payment of all financial obligations and

operating expenses (except out-of-pocket expenses) (Article IV).  Barat LP enjoys the profits and bears the risk of loss from the operation of the Barat LP systems (Article IV).  Barat LP must approve key USCC employees responsible for the operation of the Barat LP systems (§ 5.1), and it has the right to require the removal of any USCC employee working on the Barat LP system (§ 5.1(a), (b), and (c)).  Barat LP also has the right, for cause, to require USCC to discharge any independent contractor engaged to perform services under the Management Agreement (§ 5.2). Finally, Barat LP is responsible for the filing of federal, state and local tax returns, audits thereof, payment of all other fees and assessments, FCC filings and filings with other governmental entities (Article IV).

Barat LP also retains unfettered use of, and unimpaired access to, all facilities and equipment associated with the Barat LP systems (Article IV).   Under Section 2.1, and subject to certain limitations of the Manager's authority described in Article IV, USCC will provide or arrange for the following services for the Barat LP systems:

- Administrative, accounting, billing, credit, collection, insurance, purchasing, clerical and such other general services as may be necessary to administer the Barat LP Systems;
- Operational, engineering, maintenance, repair and such other technical services as may be necessary to operate the Barat LP Systems;
- Marketing, sales, advertising and such other promotional services as may be necessary to market the products and services of the Barat LP Systems, *provided that* Barat LP shall determine the terms upon which the Barat LP Systems' services are offered and prices charged for its services.

In addition, Section 2.2 provides that, under the direction and guidance of Barat LP and pursuant to the business plan and budgets approved by Barat LP, USCC will also provide the following services for the Barat LP Systems:

- Negotiating, as agent for Barat LP, such agreements as may be necessary for the provision of services, supplies, office or other types of space, utilities, insurance, concessions and the like;
- Developing and implementing plans for the construction of the Barat LP Systems in accordance with the Technical Services Plan to be developed with Barat LP;
- Developing and implementing promotional programs, including, but not limited to, the negotiation, as agent for Barat LP, of resale and/or agency arrangements;
- Developing and implementing mechanisms and systems for billing for the products and services provided by the Barat LP Systems or entering into arrangements to procure on behalf of Barat LP such billing mechanisms and systems;
- Developing and implementing plans for the maintenance of the Barat LP Systems and for monitoring the performance of the Barat LP Systems;
- Developing and implementing sales and marketing plans for the services to be provided by the Barat LP Systems, including, but not limited to, arrangements for roaming agreements, arranging for necessary sales personnel and technical support for sales

operations, and arranging for appropriate marketing vehicles for the sales of Barat LP's services and associated equipment;

- Assisting Barat LP in the preparation of filings, applications, reports and other matters with Governmental Entities.

USCC is required to perform its services in accordance with the rules and with all other applicable legal requirements (§§ 13.4, 13.5). USCC is also required to perform its services in a diligent, professional, commercially reasonable and workmanlike manner, consistent with industry standards for the wireless telecommunications industry (§ 13.5). USCC is entitled to be reimbursed for out-of-pocket expenses incurred in its performance under the Management Agreement (§ 7.1) and to be paid a management fee (§ 7.2).

The Management Agreement has an initial term of eight years (§ 10.1). Barat LP may terminate the Management Agreement at will upon one year's written notice (§ 10.2(b)(iii)). In addition, Barat LP may terminate the Management Agreement upon, *inter alia*, USCC's breach of the agreement, after a specified cure period, or an FCC final order revoking, terminating, canceling or refusing to renew any Barat LP license due to any act of omission or commission by USCC (§ 10.2(b)(i)). Any termination of the Management Agreement will trigger the development of a transition program to assure continued operation of the Barat LP systems and to minimize any disruption to existing customers (§ 10.4).

**EXHIBIT III**

**RESPONSE TO SPECIFIC INFORMATION REQUESTS INCLUDED ON INFORMATION AND INSTRUCTIONS FOR COMPLETION OF FCC FORM 611-T**

<u>Progress In Meeting Construction Requirements:</u>  The subject licenses are not subject to a specific construction requirement other than a requirement, at the time of application for renewal, that the renewal applicant has provided "substantial" service during its past license term.  Filer's licenses are due to expire April 30, 2022. Barat LP is in the planning stages of construction and is considering equipment capabilities.

<u>Services Provided or Planned:</u>  Voice and data services, including Broadband Internet Access.

<u>Number of Subscribers:</u>  Currently none.